Albert J. Grosser Co. *v.* Rosen, Appellant.

Argued May 8, 1969. Before BELL, C. J., JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

reargument refused January 5, 1970.

*Michael H. Egnal,* with him *John D. Egnal,* and *Egnal, Simons & Egnal,* for appellant.

*Seymour Kurland,* with him *Wolf, Block, Schorr and Solis-Cohen,* for appellee.

OPINION BY MR. JUSTICE COHEN, November 11, 1969:

This is an action by a real estate broker, Albert J. Grosser, Co. (Grosser), for leasing brokerage commissions allegedly owed by A. A. Rosen (Rosen). The essential facts are not in dispute.

Bargain City, U.S.A. retained Grosser to secure a tenant for premises it owned at 2501 Kensington Avenue, Philadelphia and negotiate a lease for the same. Grosser did secure a tenant, Linville Corporation, and

negotiated a lease dated September 29, 1959, for a term of ten years commencing November 1, 1959, at a monthly rental of $5000. Linville had an option to renew at identical terms for an additional ten year period.

On July 6, 1962, Bargain City gave a mortgage of $250,000 to Franklin National Bank of Long Island (Franklin). The lease became subordinated to the mortgage by virtue of Section 26 of the lease which states "[t]his lease shall be subject and subordinate at all times to the lien of any mortgages . . . now or hereafter placed on the land and buildings. . . ." On September 22, 1965 the mortgage was assigned to Rosen.

Because of a default under the mortgage, Rosen began collecting the rent as mortgagee in possession from October 1, 1965 until February 7, 1966. On November 10, 1965, judgment was entered in favor of Rosen against Bargain City. Damages were assessed in the amount of $314,375. A writ of execution was issued, and sale was scheduled for December 5, 1965.

On December 1, 1965 Lawrence Sales Corporation (Lawrence) which had previously acquired the assets of Linville filed a petition to stay the sheriff's sale. After negotiations between counsel for Lawrence and Rosen, a stipulation was entered into and approved by Judge GOLD in the form of a court order. The order provided that the sheriff's sale would take place but that "said sale shall be made subject to the Lessee's interest in the lease. . . ." The order only concerned the original term of the lease and left open the status of the renewal provision. The order made no mention of broker's commissions.

At the sheriff's sale on February 6, 1966, the premises was sold to Rosen for $313,000. Subsequently, on August 4, 1966, Lawrence and Rosen entered into a lease arrangement to commence on November 1, 1969.

That lease provides for a total rental of $735,000 payable in monthly installments of $6,125.

Grosser's claim to compensation is based upon four clauses in the original lease between Linville and Bargain City. Section 37 provides that Grosser may permit payment of the leasing brokerage due to be spread over the period of the lease and any renewals thereof by collecting the rent due and to become due and retaining 5% to cover both leasing brokerage and management commission. It provides further that if the agency is terminated, Grosser is to receive a lump sum payout computed as follows: 5% of the rental accruing up to one year after such termination, plus 4% of the rental up to the end of the second year, and 3% of the rental for the balance of the term, if any.

Section 38 gives Grosser the right to collect the deferred leasing brokerage that is payable upon termination of its agency in the event of foreclosure, execution, bankruptcy, sale of the premises, alteration or cancellation of the lease without Grosser's approval, or collection of the rents by parties other than Grosser.

Section 39 says Grosser shall retain the lease in its possession under lien for its services. It further states that: "Agent has a beneficial interest in this lease to the extent of any deferred leasing brokerage due it. . . . No grantee, assignee, receiver, trustee, encumbrancer, or other person or officer shall adopt or receive the benefits of this lease without paying said brokerage or making provision for the same."

Section 40 grants agent commission rights with respect to any renewals of the lease and sets forth specifically that it "shall be deemed a renewal if the relationship of landlord and tenant continues after the expiration of the original or any renewal term, under this or any other agreement, between Agent's Principal

or any successor or assign of such Principal and Lessee or any person, Company or Corporation having any interest, relationship or connection in or with Lessee or this lease."

From October 1, 1965, when Rosen began collecting the rent as mortgagee in possession, Grosser did not collect any rent, did not perform any management services and did not receive any commissions. Grosser commenced this action against Rosen on March 13, 1967. He claimed the 5% monthly fee both as to rents collected *after* the sheriff's sale for the balance of the term of the original lease and as to rents collected *prior* to the sheriff's sale by Rosen's assignor and Rosen as mortgagee in possession. In addition, Grosser claimed a pay-out commission as to rents payable under the new lease between Rosen and Lawrence effective November 1, 1969.

At trial the court, without a jury, found in favor of Grosser as to all of his claims for the total sum of $31,200, together with interest from the date of the complaint. This represented $9,150 calculated as the pay-out commission on the rents payable for the balance of the term of the first lease after Grosser's agency was terminated and $22,050 calculated as the pay-out commission on the rental accruing under the second lease.

In question here are three separate time periods, and each has to be considered separately. The first is the period in which Rosen was collecting rents as mortgagee in possession (October 1, 1965-February 6, 1966). In the abstract it is irrelevant that Section 37 says "All the provisions of this clause shall bind assigns, heirs, executors, administrators and successors of Principal" and that Section 39 says "No grantee, assignee, receiver, trustee, encumbrancer or other person or officer shall adopt or receive the benefits of this lease

without paying said brokerage." Before Rosen can be found liable for these payments, he must have done something to show an assent to the first period in question. By taking the benefits of the lease and collecting the rents, Rosen has adopted the lease and must likewise take its burdens.

The situation with respect to the second period is much more difficult—(February 7, 1966-October 31, 1969). As a general rule a sheriff's sale discharges that lien and all subsequent junior liens. Sum. Pa. Jur. Mortgages §256. Thus, if there had been no agreement between Lawrence and Rosen prior to the sale, the lease and all rights created under it would have been extinguished as the result of the subordination agreement in Section 26. If that had been the situation, Grosser would have been left to his remedies against Bargain City.

It is necessary, however, to determine the meaning and effect of the Lawrence-Rosen agreement which is the key to this case. Grosser argues that the agreement represents a waiver by Rosen of the subordination clause and says that this has two important effects. First, it makes this case identical to *Heymann v. The Fourth Dickerson Building Ass'n,* 113 Pa. Superior Ct. 26, 171 Atl. 482 (1934), in that both involve an assignment of rentals which survive sheriff's sales. Secondly, as in *Heymann,* it represents an express adoption of the lease and requires Rosen to take the lease's burdens with its benefits. For purposes of this opinion, we can agree with Grosser that this lease goes at least as far as the one in *Heymann* in carving out of the rentals the amounts due Grosser. Given the fact that absent the stipulation, the assignment of rentals would not have survived the sale and there would have been no express addition, it is necessary to determine whether the agreement alters that situa-

tion. There seems no indication in the circumstances surrounding the agreement that Grosser's interests were being protected. Grosser took no part in the negotiation or drafting of it, and nowhere does it appear to have been the intent of Lawrence or Rosen to protect Grosser's position. If the identical agreement had been made one day after the sale, Grosser would have no claim because it would have lost its rights under the lease at the judicial sale. That did not occur because, as a practical matter, Lawrence saw it had to act prior to the sale if it were to protect its position. Thus, it used bargaining power in the form of a threat to delay the sale in order to protect itself under the lease. Grosser could have joined in Lawrence's action against Rosen or tried in other ways to create bargaining power for itself prior to the sale. It did not, and it seems highly unlikely that Lawrence intended to protect anyone except itself. Therefore, it seems more reasonable to view the stipulation not as a waiver of the subordination clause and an adoption of the lease by Rosen, but rather as a utilization of that clause and a compromise, reached after hard bargaining, by which Rosen agreed to recognize Lawrence's interests rather than face a possible delay of the sale. Neither Lawrence nor Rosen had a duty to protect Grosser's position, and there is no evidence that either intended to do so gratuitously.

The wording of the order bears out this interpretation. Paragraph one says "Said sale shall be made subject to the lessee's interest in the lease." Paragraph two says "Said sale shall be made subject to the *claim of Lawrence* . . . that the said lease is not discharged by the sale. . . ." The most reasonable reading of that is that the lease is not discharged so far as the interests of Lawrence are concerned. The third paragraph refers to the renewal provisions of the original lease

and by its language leaves open the question whether that provision survived the sale. For our purposes, the important aspect of the paragraph is the intent of the parties that it reveals; that certain aspects of the original lease should survive the sale while others would not while still others might not. The later conduct of Lawrence in agreeing to pay a higher rental for the 1969-79 period (whereas the original lease provided for renewal at identical terms) shows its belief that the renewal clause was discharged. Consequently, the intent of the parties in reaching the agreement was not to leave the original lease intact, but rather to protect their own interests by saving the clauses most important to them.

It appears that Lawrence and Rosen did not agree that the lease would not be extinguished by the sale but that a new agreement between them representing Lawrence's interest under the old lease would survive the sale. Neither party had a duty to protect Grosser's interests; Grosser had an opportunity to protect itself and in failing to do so must now face the consequences.

It is the conclusion of this Court that although the lease did represent an assignment out of the rentals, that right was extinguished by the sheriff's sale. Also there is no evidence that Rosen explicitly adopted the lease. What he did adopt was an agreement between himself and Lawrence which protected the latter's position but not Grosser's. The situation is analogous to *Solis-Cohen v. Phoenix Mutual Life Insurance Co.*, 413 Pa. 633, 198 A. 2d 554 (1964), in which there was also no evidence of the assumption of a personal obligation. Thus, Grosser can not recover commissions for the period February 7, 1966-October 31, 1969.

Grosser's final claim is for commissions covering the period November 1, 1969-October 31, 1979. As we have already decided that the sheriff's sale extinguished

the lease (at least as far as Grosser's rights are concerned), it is clear that Grosser can assert no rights based on that lease.

Judgment vacated; record remanded for the entry of a judgment in the amount due Grosser for the period October 1, 1965-February 6, 1966.

Mr. Justice EAGEN dissents and would affirm.