William I. Mirkil Company, Appellant, *v.* Gaylon.

Argued September 15, 1970. Before WRIGHT, P. J., WATKINS, MONTGOMERY, JACOBS, HOFFMAN, SPAULDING, and CERCONE, JJ.

*Edward H. Fackenthal,* with him *Franklin H. Spitzer,* and *Henderson, Wetherill & O'Hey,* and *Wolf, Block, Schorr & Solis-Cohen,* for appellant.

*Roger B. Reynolds,* with him *Russell J. Brownback,* for appellees.

OPINION PER CURIAM, November 13, 1970:
Order affirmed.

_____

DISSENTING OPINION BY HOFFMAN, J.:

In 1959, at the request of the then owners, appellant (a real estate brokerage firm) secured tenants to occupy adjoining parcels of land in Montgomery County. The large parcel was leased for a term of one year beginning on December 1, 1959, with rent payable in monthly installments. The other parcel was subject to a similar lease commencing November 1, 1959. Each lease contained provisions obligating the lessor-owners to pay appellant leasing commissions during the initial rental period and all renewals for its services in securing the lease.[1]

_____

[1] Paragraphs 19 and 20 of the lease with Scott Smith Cadillac Co. state in pertinent part:

"19. It is understood and agreed that [appellant] is the sole, moving, efficient and procuring cause of this lease, and in consideration of its services [lessor] agrees to pay to [appellant] at the time of the execution hereof, commissions in accordance with the Recommended Schedule of Commissions and Charges of the [Main Line Board of Realtors]. . . .

"20. In case this lease is renewed or continued, by expressed or implied agreement, or in any manner whatsoever, for any further

In February, 1960, appellees purchased both parcels. From the time of the purchase until the Fall of 1960 appellees collected the rents and paid appellant the commissions provided by the lease. Prior to the expiration of the first year terms pursuant to appellee's request, the leases were terminated. Appellees then proceeded to negotiate new leases with the same tenants. Appellant was not mentioned in either of the new leases, nor has it been paid any commissions since termination of the original leases.

Appellant filed a complaint in assumpsit seeking commissions for the remainder of the original lease term and for any renewals. Preliminary objections in the nature of a demurrer were filed and sustained by the court sitting en banc. This is an appeal from that order.

When appellees purchased the properties and continued to collect rents and pay over brokerage commissions, they clearly adopted the lease. As was said in *Albert J. Grosser Co. v. Rosen,* 436 Pa. 311, 317, 259 A. 2d 679, 681 (1969), "[b]efore [mortgagee in possession] can be found liable for [brokerage] payments, he must have done something to show an assent. . . . By taking the benefits of the lease and collecting the rents, [mortgagee in possession] has adopted the lease and must likewise take its burdens." When a purchaser elects to affirm a lease, "he has all the remedies of a landlord, subject to all the advantages and disadvan-

period after the expiration of the term hereof, or any renewal or extension thereof, or in case the relationship of landlord and tenant with the same tenant . . . continues after the expiration of the term hereof or any renewal or extension thereof, under this or any other lease or agreement, then in any such event, [appellant] shall receive further from [lessor] as additional commission at the times of such renewals or continuances or the entry into any such lease or other arrangement, commissions as prescribed in the present Recommended Schedule. . . ."

tages of that relation." *Curry v. Bacharach Quality Shops, Inc.*, 271 Pa. 364, 370, 117 A. 435, 437 (1921). It would be inequitable to allow appellees to receive rents pursuant to a lease, and yet not have to pay the agreed sums to the party who obtained the lease. It is the adoption of the lease, independent of the conveyance of the land, which imposes the obligation to pay commissions.

The lower court held that appellees had no such obligation by relying on the Act of June 12, 1878, P. L. 205, §1, 21 P.S. §655.[2] Reasoning that the leases were "other encumbrances" within the Act, the court concluded that "in order to be held responsible for the rental commissions in question, the defendants must have expressly agreed in writing to assume personal liability." The case relied upon for this proposition, *Fred Whitaker Co. v. Cohen*, 7 Pa. D. & C. 2d 105 (1955), holds only that a covenant to repair is not such an "other encumbrance".

The Act is inapposite to a case such as the one at bar. My research reveals that the Act has been applied only to cases of grantees taking under and subject to mortgages, ground rents, or judgment liens.

A realistic appraisal of the circumstances indicates that the only proper result is to hold appellee liable for the commissions.[3] To hold otherwise would allow

---

[2] "A grantee of real estate which is subject to ground rent or bound by a mortgage or other encumbrance, shall not be personally liable for the payment of such ground rent, mortgage or other encumbrance, unless he shall, by an agreement in writing, have expressly assumed a personal liability therefor, or there shall be express words in the deed of conveyance stating that the grant is made on condition of the grantee assuming such personal liability: Provided, That the use of the words 'under and subject to the payment of such ground rent, mortgage or other encumbrance,' shall not alone be so construed as to make such grantee personally liable as aforesaid."

[3] This result is entirely consistent with the general custom in the real estate business. This is evidenced by the fact that the pro-

a landlord to use a broker to obtain a lease, thus enhancing the value of his property, and then sell the property at a greater price while cutting off the rights of the broker. In fact, and as noted in the lease, the broker was the "sole moving, efficient and procuring cause" of the lease. The broker was further motivated by the promise of commissions to secure a tenant who was willing to exercise renewals and stay in possession for a number of years. There would be no incentive to obtain such a lucrative arrangement if the whim of the landlord could abrogate the broker's right to commissions. Cf. *Heymann v. Fourth Dickerson Building Association,* 113 Pa. Superior Ct. 26, 171 A. 482 (1934).

The lease itself provides a mechanism by which the landlord may terminate the lease while recognizing the contribution of the broker. Paragraph twenty-one establishes a procedure for payments according to a specific schedule in the event of termination.[4] Paragraph

---

visions quoted in footnote 1, *supra,* and notes 4 and 5, *infra,* are virtually identical with suggested provisions in the Philadelphia Board of Realtors *1970 Yearbook;* "Suggested Schedule of Commissions and Charges for Real Estate Services." With paragraph twenty of the instant lease compare section III-A of the Suggested Schedule: "A lease shall be considered renewed for the period during which the tenant designated in the lease, . . . shall remain in possession of the leased property beyond the expiration of any term of any lease, . . ." With paragraph twenty-one compare section II-A(6) of the Schedule: "In the absence of a written contract to the contrary, either party may terminate the arrangements by which the Realtor is collecting the rent, and, in such event, the Realtor's principal shall pay the Realtor, at the time of such termination, an aggregate of [6%, 5% and 4% of the rent which would be due in succeeding years]." Also, paragraph thirty-five of the lease provides that "wherever the name 'Philadelphia Real Estate Board' appears herein it shall be taken to mean 'Main Line Board of Realtors'. . . ."

4 "21. The said agency and rights of [appellant] although coupled with an interest, may be terminated and this lease recovered by [lessor] at any time after ninety (90) days' written no-

twenty-nine of the lease imposes the obligations of each party upon its assignees.[5]  Appellee should be liable for the leasing brokerage according to the terms of the lease.

Accordingly, I would reverse the order of the lower court and remand the record for further proceedings consistent with this opinion.

MONTGOMERY and CERCONE, JJ., join in this dissenting opinion.

---

tice to [appellant], on condition, however, that [appellant] shall first receive, at the time of receiving such notice, the balance of the leasing brokerage due it, which shall be a sum equal to Five per cent (5%) of the rentals reserved up to one year after such termination, plus a sum equal to Four per cent (4%) of the rentals reserved for the second year after such termination, if any, plus a sum equal to Three per cent (3%) of the rentals reserved for the balance of the term thereafter, or any extension or renewal thereof, if any. . . . It is understood that the said sums shall be payable to [appellant] in the event of any termination, whether such termination be voluntary or involuntary on the part of [lessor], its successors or assigns, or the owner. . . . To secure the payment of any balance of leasing commissions, the rentals reserved hereunder or in any subsequent lease growing out of the tenancy hereby created, are hereby assigned, transferred and set over to [appellant]. . . ."

[5] "29. All rights, remedies and liabilities herein given to or imposed upon either of the parties hereto shall extend . . ., so far as this lease and the term or terms hereby created are assignable, to the assigns of such party."