In re Robert Lee JONES, Debtor.

HOME LIFE INSURANCE
CO., Plaintiff,

v.

Robert Lee JONES and Margaret
Graham, Trustee, Defendants.

Robert Lee JONES, Plaintiff,

v.

HOME LIFE INSURANCE COMPANY,
Administrator, Veterans Administration
and Joseph A. Sullivan, Sheriff, Defendants.

Bankruptcy No. 80–00175G.
Adv. Nos. 81–0339G, 81–0734G.

United States Bankruptcy Court,
E. D. Pennsylvania.

June 21, 1982.

Werner H. Von Rosenstiel, Philadelphia, Pa., for Home Life Ins. Co.

Eileen A. Beckett, Irwin Trauss, Community Legal Services, Philadelphia, Pa., for Robert Lee Jones.

Margaret Graham, Philadelphia, Pa., Former Standing Trustee under Chapter 13.

James J. O'Connell, Philadelphia, Pa., Present Standing Trustee under Chapter 13.

## OPINION

EMIL F. GOLDHABER, Bankruptcy Judge:

The issues presented in these related cases are (1) whether the debtor had any interest, at the time he filed his petition under chapter 13 of the Bankruptcy Code ("the Code"), in property that had been sold at sheriff's sale so as to make the automatic stay provisions of the Code applicable to that property and (2) whether the debtor could avoid certain actions taken by the sheriff and mortgagee pursuant to the avoidance powers of the debtor under the Code. We conclude that, because the sheriff's deed had not been issued and presented for recording before the debtor filed his petition under the Code, the debtor still retained an interest in the property which was, therefore, protected by the automatic stay provisions of the Code. Consequently, we determine that the actions taken by the sheriff and mortgagee after the debtor's filing are void as a violation of the automatic stay and of § 549 of the Code. We further conclude that the sheriff's sale which occurred before the debtor's filing under the Code is not avoidable pursuant to § 544(a)(3) of the Code but is avoidable pursuant to § 548(a)(2) of the Code.

The facts of the instant case are as follows:[1] In January, 1963, Robert Lee Jones ("the debtor") executed a mortgage in the amount of $8,000 on property owned by him and located at 634 South 54th Street, Philadelphia, Pennsylvania. That mortgage was guaranteed by the Veterans' Administration ("the VA") and was, thereafter, assigned to Home Life Insurance Company ("Home Life"). In 1978, the debtor defaulted on said mortgage by failing to make the required monthly payments, whereupon Home Life began mortgage foreclosure proceedings in the state court. Pursuant thereto, a sheriff's sale was held on September 10, 1979, at which time the property was sold to Home Life's attorney. Home Life thereafter assigned its bid to the VA and took steps to perfect its title in the property. However, on October 5, 1979, before the sheriff had issued a deed for that property, the debtor filed a petition in the state court to open the judgment and to set aside the sheriff's sale thereby staying any further actions against the property.

On January 24, 1980, the debtor filed a petition for an adjustment of his debts under chapter 13 of the Code. Thereafter, on March 6, 1980, Judge Lederer of the Court of Common Pleas of Philadelphia County issued an order (1) dismissing the debtor's petition to open the judgment in mortgage foreclosure and to set aside the sheriff's sale, (2) affirming the judgment in mortgage foreclosure and the sheriff's sale and (3) authorizing the issuance of a deed transferring title to the property to the VA. Pursuant to that order, the sheriff issued a deed to the property to the VA. However, the VA notified Home Life that, because the debtor had filed a petition under chap-

---

1. This opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

ter 13 in the interim, Home Life would have to litigate the issue of who had title to the property.

Accordingly, Home Life filed a complaint in this court seeking relief from the automatic stay on three grounds: (1) that title to the property had already passed from the debtor to Home Life by virtue of the sheriff's sale, (2) that the debtor had no equity in the property because the secured debt thereon exceeded the fair market value of the property and (3) that the debtor has acted in bad faith in the filing of his chapter 13 petition with the sole intent to hinder and delay the mortgage foreclosure proceedings. At the trial thereon it was agreed that we would initially address only the legal issue presented by Home Life's first ground.

In the meantime, the debtor filed a separate complaint against Home Life, the VA and the sheriff seeking (1) sanctions against the defendants for the actions taken by them in violation of the automatic stay and (2) avoidance of the transfer of any of the debtor's interests in the property pursuant to §§ 544(a)(3), 548(a)(2) and 549 of the Code. Because the issues raised by the debtor's complaint were the same as those raised by the debtor in his answer to Home Life's complaint, the parties agreed to have the two complaints decided together.

## I. THE APPLICABILITY OF THE AUTOMATIC STAY.

With respect to the first issue of whether the automatic stay is applicable to the property in question, we conclude that it is because the debtor still retained an interest in that property at the time he filed his petition for relief. As of the date of the debtor's filing in this case, the sheriff's sale of the property had been held but no deed had been issued. We have recently held that, without the issuance, acknowledgment and presentation for recording of the sheriff's deed, the debtor still retains, under Pennsylvania law, certain legal and equitable interests in the property which are protected by the automatic stay provisions of the Code.[2] Consequently, any actions taken against that property after the debtor's filing are a violation of the automatic stay provisions of the Code,[3] as well as a violation of § 549(a) which prohibits postpetition transfers.[4] In this case, the sheriff's deed

---

**2.** *In re Wilson*, 19 B.R. 45, 47 (Bkrtcy.E.D.Pa. 1982). *See also, In re Boicesco*, B.R. No. 81–02683, Adv. No. 81–0934 (Bkrtcy.E.D.Pa. Sept. 17, 1981); *In re Russell*, 8 B.R. 342, 7 B.C.D. 288 (Bkrtcy.W.D.1980). *Cf. In re Sparkman*, 9 B.R. 359, 3 C.B.C.2d 856 (Bkrtcy.E.D.Pa.1981) in which we held that once the sheriff's deed has been issued, acknowledged and presented for recording the debtor has lost all interest in the property which is, thus, not protected by the automatic stay provisions of the Code. *See also*, Pa.Stat.Ann. tit. 12, §§ 2537 and 2571 (Purdon).

**3.** Section 362(a) of the Code provides, in relevant part:

(a) Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title operates as a stay, applicable to all entities, of—

(1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

(2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

(3) any act to obtain possession of property of the estate or of property from the estate;

(4) any act to create, perfect, or enforce any lien against property of the estate;

(5) any act to create, perfect, or enforce against property of the debtor any lien to the extent that such lien secures a claim that arose before the commencement of the case under this title....

11 U.S.C. § 362(a).

**4.** Section 549(a) of the Code provides:

(a) Except as provided in subsections (b) and (c) of this section, the trustee may avoid a transfer of property of the estate—

(1) that occurs after the commencement of the case; and

(2)(A) that is authorized under section 303(f) or 542(c) of this title; or

(B) that is not authorized under this title or by the court.

11 U.S.C. § 549(a).

was not issued to Home Life until after the debtor's filing and, thus, the issuance of that deed is void as a violation of §§ 362(a) and 549(a) of the Code.[5]

Accordingly, we conclude that sanctions for that violation are appropriate, at least as to Home Life. Home Life had knowledge of the debtor's filing under chapter 13 of the Code and yet persisted in its actions.[6] However, we find that the VA is not liable for any violation of the stay since it took no action against the debtor or his property after the debtor's filing and, in fact, the VA refused to accept the deed from Home Life because it felt that the automatic stay prohibited it from doing so.[7]

## II. THE APPLICABILITY OF § 544(a)(3) OF THE CODE.[8]

With respect to the debtor's contention that the sheriff's sale and other actions taken in furtherance thereof *before* the debtor's filing under the Code are avoidable pursuant to the Code, we conclude that the debtor's reliance on § 544(a)(3) is without merit. That section provides that:

(a) The trustee shall have, as of the commencement of the case, and *without regard to any knowledge of the trustee or of any creditor*, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

.      .      .      .      .

(3) *a bona fide purchaser of real property* from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser exists.[9]

The debtor asserts that, because the sheriff's deed had not been recorded as of the date the debtor filed under the Code, the interest acquired by Home Life at the sheriff's sale was avoidable by a bona fide purchaser as of the commencement of the case

5. *See, e.g., In re Dennis*, 14 B.R. 125 (Bkrtcy.E.D.Pa.1981). *See generally*, 2 Collier on Bankruptcy ¶ 362.11 (15th ed. 1981) and cases cited therein. We do not hold, however, that Judge Lederer's action in issuing his order of March 6, 1980, was a violation of the automatic stay provisions of the Code. Although § 362(a)(1) of the Code stays the continuation of judicial proceedings *against* the debtor, it does not stay the continuation of such an action *by* the debtor. In this case, Judge Lederer's order was prompted by the debtor's petition to open the judgment in mortgage foreclosure and to set aside the sheriff's sale and, thus, cannot be said to be the continuation of a judicial proceeding against the debtor simply because Judge Lederer's decision was adverse to the debtor.

6. One who violates the automatic stay provisions of the Bankruptcy Code (or the former Bankruptcy Act) with actual knowledge of those provisions is in contempt of the bankruptcy court. *See, e.g., Fidelity Mortgage Investors v. Camelia Builders, Inc.*, 550 F.2d 47 (2d Cir. 1976), *cert. denied*, 429 U.S. 1093, 97 S.Ct. 1107, 51 L.Ed.2d 540 (1977); *United States v. Christie Ind., Inc.*, 465 F.2d 1002 (3d Cir. 1972); *In re Rubin*, 378 F.2d 104 (3d Cir. 1967); *In re Wilson*, 19 B.R. 45 (Bkrtcy.E.D.Pa. 1982).

7. *See* Debtor's Exhibit 2. *See also, In re Abt*, 2 B.R. 323, 5 B.C.D. 1237 (Bankr.E.D.Pa.1980). Although the Sheriff of Philadelphia County

was also a named defendant in the debtor's complaint, we are unable to determine his liability because, notwithstanding his failure to plead or to appear at the trial, there was no evidence presented that he had been served with a copy of the complaint nor was there a request for a default judgment as to him.

8. In its reply memorandum, filed in the second adversary proceeding, Home Life conceded that the debtor's claims were all valid, except the claim that Home Life should be held in contempt, and stated that "on the strength of the facts adduced, [it] agrees that title to the premises had *not* legally passed to the defendant [Home Life], and therefore must be reconveyed to the plaintiff [debtor]." *See* Memorandum at 3, filed November 16, 1981. While we will accept this statement as an admission of the facts alleged in the debtor's complaint, we do not conclude that it is determinative of the legal issues raised by that complaint and, because those legal issues present difficult issues of law, we have discussed them at length in our opinion herein.

9. 11 U.S.C. § 544(a)(3) (emphasis added). Section 522(h) permits the debtor to exercise the trustee's avoidance powers under § 544 if the trustee does not attempt to do so and if the property in question could have been exempted by the debtor. 11 U.S.C. § 522(h).

and was, thus, avoidable by the debtor pursuant to § 544(a)(3). We disagree. Under Pennsylvania law, a subsequent purchaser of real property has priority over the rights of prior purchasers *if* the subsequent purchaser is a bona fide purchaser without actual or constructive notice of the rights of the prior purchasers.[10] The United States Court of Appeals for the Third Circuit has recently interpreted § 544(a)(3) of the Code as giving the trustee (or the debtor) the position of a bona fide purchaser without any *actual* notice of the interests of any prior purchasers.[11] However, the Court of Appeals held that the language of that section which states that the trustee takes such a position "without regard to any knowledge of the trustee or of any creditor" does not go so far as to provide that the trustee (or the debtor) is without any *constructive* notice of the rights of a prior purchaser.[12] Thus, the Court of Appeals held that, where a prior purchaser had given constructive notice to all the world of its interest in property prior to the filing of the debtor's petition for relief, then the trustee (or the debtor) could not avoid the interest of that purchaser pursuant to § 544(a)(3) because the trustee would take the position of a bona fide purchaser who had constructive notice of the prior purchaser's interest and, under Pennsylvania law, such a bona fide purchaser does not take priority over the prior purchaser.[13]

■ Applying that decision to the instant case, we conclude that the debtor herein may not avoid the interest which Home Life acquired in the debtor's property by virtue of the sheriff's sale pursuant to § 544(a)(3) because there was constructive notice to all the world of Home Life's interest prior to the debtor's filing under the Code. Home Life had obtained a judgment on its complaint in mortgage foreclosure. The docketing of such a judgment is constructive notice to all of what that judgment contains [14] and requires a prospective purchaser to inquire as to the result of that action.[15] Since any such inquiry would have revealed that the property in question was sold at the sheriff's sale, a subsequent purchaser is deemed to have constructive notice of that fact.[16] Thus, we conclude that, because there was constructive notice, as of the date of the debtor's filing under the Code, of the fact that the property in question was sold at the sheriff's sale to Home Life, the debtor as a bona fide purchaser of that property as of the commence-

---

**10.** The Pennsylvania recording statute provides:

All deeds, conveyances, contracts, and other instruments of writing wherein it shall be the intention of the parties executing the same to grant, bargain, sell, and convey any lands, tenements, or hereditaments situate in this Commonwealth, upon being acknowledged by the parties executing the same or proved in the manner provided by the laws of this Commonwealth, shall be recorded in the office for the recording of deeds in the county where such lands, tenements, and hereditaments are situate. *Every such deed,* conveyance, contract, or other instrument of writing *which shall not be acknowledged or proved and recorded, as aforesaid, shall be adjudged fraudulent and void as to any subsequent bona fide purchaser* or mortgagee or holder of any judgment, duly entered in the prothonotary's office of the county in which the lands, tenements, or hereditaments are situate, *without actual or constructive notice* unless such deed, conveyance, contract, or instrument of writing shall be recorded, as aforesaid, before the recording of the deed or conveyance or the entry of the judgment under which such subsequent purchaser, mortgagee, or judgment creditor shall claim. Nothing contained in this act shall be construed to repeal or modify any law providing for the lien of purchase money mortgages. Pa.Stat.Ann. tit. 21, § 351 (Purdon 1955) (emphasis added).

**11.** *McCannon v. Marston*, No. 81–2490 (3d Cir. May 14, 1982).

**12.** *Id.*, slip op. at 6–8.

**13.** *Id.*

**14.** *See, e.g., Coral Gables, Inc. v. Kerl*, 6 A.2d 275, 334 Pa. 441 (Pa.1939); *First Nat'l Bank v. Walker*, 145 A. 804, 296 Pa. 192 (Pa.1929); *Johnson v. Hopwood*, 20 A. 630, 137 Pa. 7 (Pa.1890). *See, generally*, 20 P.L.E. § 185 (1959).

**15.** *See, e.g., Quigley v. Breyer Corp.*, 66 A.2d 286, 362 Pa. 139 (Pa.1949); *Hottenstein v. Lerch*, 104 Pa. 454 (Pa.1883).

**16.** *See* note 15 *supra. See, also, Buehler v. Buffington*, 43 Pa. 278 (Pa.1862).

ment of the case could not avoid Home Life's interest in that property under § 544(a)(3) and Pennsylvania law.

## III. THE APPLICABILITY OF § 548(a)(2) OF THE CODE.

The second provision of the Code on which the debtor relies in attempting to avoid Home Life's interest is § 548(a)(2) which provides, in relevant part:

(a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor—

. . . . .

(2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and

(B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.[17]

In support of this assertion, the debtor testified that he was insolvent on the date of the sheriff's sale and that the property sold at sheriff's sale was worth between $10,000.00 and $12,000.00. Home Life bought that property for a bid of $5,800.00 (the amount of the outstanding debt owed on the mortgage) while stating on the City Transfer Tax Certificate that the property had a fair market value of $15,000.00.[18] Based on these facts, the debtor asserts that the sheriff's sale was a transfer of the debtor's property at a time when he was insolvent and that the debtor received "less

than a reasonably equivalent value in exchange for that transfer," thus making that transfer avoidable pursuant to § 548(a)(2).

From the facts presented herein, it appears that Home Life obtained the property in question for a consideration of approximately one third to one half of the fair market value of that property. In a recent decision involving § 67d(2)(a) of the Bankruptcy Act, which contained language almost identical to § 548(a)(2) of the Code,[19] the United States Court of Appeals for the Fifth Circuit stated that:

We have been unable to locate a decision of any district or appellate court dealing only with a transfer of real property as the subject of attack under section 67(d) of the Act, which has approved the transfer for less than 70 percent of the market value of the property.

*Durrett v. Washington National Insurance Company,* 621 F.2d 201, 203 (5th Cir. 1980). Consequently, the court in *Durrett* found that a transfer of the debtor's property for only 57.7% of the fair market value of that property was avoidable under § 67d of the Act. *Id.* at 204. Significantly, the transfer which the *Durrett* court held was avoidable was the transfer of the debtor's property at a foreclosure sale under a deed of trust.

In a recent decision dealing with § 548(a)(2) of the Code, the Bankruptcy Court for the Eastern District of Tennessee (1) adopted the 70% standard of the *Durrett* court and (2) applied that test to determine the avoidability of a foreclosure sale of the debtor's real property.[20] Because the court found that the price at which the debtor's

---

**17.** 11 U.S.C. § 548(a)(2). Again, § 522(h) permits a debtor to exercise the trustee's avoidance powers under § 548 if the trustee does not attempt to do so and if the debtor could have claimed the property in question as exempt. *See* 11 U.S.C. § 522(h).

**18.** *See* Debtor's Exhibit 5 at 3.

**19.** Section 67d(2)(a) of the Act provided:
(2) Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this Act by or against him is fraudulent (a) as to creditors existing at

the time of such transfer or obligation, if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent. . . .

11 U.S.C. § 107(d)(2)(a) (repealed 1978). Section 67d(6) provided that any transfer which was fraudulent as provided in subsection d of that section was null and void as to the trustee. For the language of § 548(a)(2), *see* text at note 17, *supra*.

**20.** *In re Thompson,* 18 B.R. 67 (Bkrtcy.E.D. Tenn.1982).

property was sold at the foreclosure sale in that case was 80.8% of its fair market value, the court held that the transfer was for a "reasonably equivalent value" and was, thus, not avoidable pursuant to § 548(a)(2).[21]

■ Although we are hesitant to hold that a sheriff's sale which was properly conducted according to Pennsylvania law is avoidable by a debtor who files a petition under the Code after that sale, none of the courts that have interpreted either § 67d(2)(a) of the Act of § 548(a)(2) of the Code have distinguished between a foreclosure sale and any other kind of transfer. Consequently, we conclude that where a sheriff's sale (held within one year of the debtor's filing under the Code and at a time when the debtor was insolvent) fails to bring a "reasonably equivalent value" in exchange for the property,[22] then that sale is avoidable pursuant to § 548(a)(2) of the Code. In the instant case, we find that the price paid at the sheriff's sale by Home Life, being only one third to one half of the market value of the debtor's property, was not a "reasonably equivalent value" for that property.[23] Furthermore, since that sale was within one year of the filing by the debtor under the Code and at a time when the debtor was insolvent, we conclude that that sale is avoidable pursuant to § 548(a)(2) of the Code and the debtor may recover that property from Home Life.[24]

## IV. THE STATUS OF HOME LIFE AFTER THE AVOIDANCE OF THE SHERIFF'S SALE.

■ In some circumstances, where a transfer is avoided pursuant to § 548(a)(2)

the transferee has a lien on the property recovered by the trustee or debtor under that section. In particular, § 548(c) provides:

> (c) Except to the extent that a transfer or obligation voidable under this section is voidable under section 544, 545, or 547 of this title, a transferee or obligee of such a transfer or obligation that takes for value and in good faith has a lien on any interest transferred, may retain any lien transferred, or may enforce any obligation incurred, as the case may be, to the extent that such transferee or obligee gave value to the debtor in exchange for such transfer or obligation.

In addition § 550(d) provides that, where the trustee or debtor recovers property pursuant to his avoidance powers under the Code (including § 548), the transferee may have a lien on that property as follows:

> (d)(1) A good transferee from whom the trustee may recover under subsection (a) of this section has a lien on the property recovered to secure the lesser of—
>
>> (A) the cost, to such transferee, of any improvement made after the transfer, less the amount of any profit realized by such transferee from such property; and
>>
>> (B) any increase in value as a result of such improvement, of the property transferred.
>
> (2) In this subsection, "improvement" includes—
>
>> (A) physical additions or changes to the property transferred;
>>
>> (B) repairs to such property;

---

**21.** *Id.* at 70.

**22.** Section 548(d)(2) defines value as follows:
(2) In this section—
(A) "value" means property, or satisfaction or securing of a present or antecedent debt of the debtor, but does not include an unperformed promise to furnish support to the debtor or to a relative of the debtor.
11 U.S.C. § 548(d)(2).

**23.** Although we agree with the *Durrett* and *Thompson* courts' conclusion that § 548(a)(2) is applicable to foreclosure sales, we do not adopt their finding that a "reasonably equiva-

lent value" must be at least 70% of the fair market value of the property. Rather, we conclude that a determination of what is a reasonably equivalent value must be done on a case by case basis.

**24.** Section 550(a)(1) of the Code permits the trustee (and debtor) to recover property, which is the subject of a voidable transfer under § 548, from the initial transferee of that transfer. 11 U.S.C. § 550. Since Home Life was the one who bought the property at the sheriff's sale, it is the initial transferee.

(C) payment of any tax on such property;

(D) payment of any debt secured by a lien on such property;

(E) discharge of any lien against such property that is superior or equal to the rights of the trustee; and

(F) preservation of such property.

The debtor asserts that Home Life is not entitled to a lien under either of those sections because, he contends, Home Life is not a "good faith" transferee since it tried to take "unconscientious advantage" of the debtor by purchasing his property for only a third of its value. We disagree with the debtor's conclusion and find that Home Life acted in good faith because it was merely exercising the rights it had under Pennsylvania law by foreclosing on the debtor's property.

Furthermore, we find that Home Life is a good faith transferee for value pursuant to § 548(c) because it did give value in exchange for the purchase of the debtor's property at the sheriff's sale. Home Life bid $5,800 for the property at the sheriff's sale.[25] In addition, Home Life paid the sheriff's costs which appear to have been $588.17.[26] Thus, we conclude that Home Life gave $6,388.17 in value for the debtor's property and is entitled to a lien in that amount on that property pursuant to § 548(c).

An analysis of § 550(d) also leads us to conclude that Home Life is entitled to a lien on the property in question. Section 550(d)(1) gives a good faith transferee a lien on property recovered by the trustee (or debtor) under § 548 for the lesser of (1) the cost to the transferee of any improvement made to the property by the transferee and (2) any increase in the value of that property as a result of that improvement. Improvement is defined in § 550(d)(2)(E) to include the discharge of any lien against the property which lien is superior to the rights of the trustee. Under Pennsylvania law, a sheriff's sale generally discharges the lien which is being executed on as well as all liens junior to that lien.[27] In the instant case, the debtor testified that there were two other liens on the property with a total balance due on them of approximately $1,500.00 to $1,600.00[28] in addition to Home Life's first mortgage. At the time of the sheriff's sale it appears that the amount due on Home Life's mortgage was at least $5,660.78.[29] Thus, the total amount of liens on the property which were discharged by the sheriff's sale is approximately $7,200.00 which represents the increase in the value of the debtor's property resulting from the sheriff's sale which is an improvement pursuant to § 550(d)(2)(E). Furthermore, it has already been found that the cost to Home Life of that improvement was the value given by it at the sheriff's sale or $6,388.17. Since the cost to Home Life is

25. Because the sheriff's sale was held on Home Life's writ of execution, it is not clear how much (if any) of the purchase price was actually paid by Home Life. *See* Pa.R.Civ.P. 3133 which provides in relevant part:

> Whenever real or personal property sold on execution is purchased by the plaintiff ..., the sheriff ... shall accept on account of the purchase price the receipt of the purchaser up to the amount of the proceeds to which he is entitled. The sheriff may require payment in cash of all legal costs distributable from the proceeds of the sale.

26. *See* Debtor's Exhibit 4.

27. *See, e.g., Albert J. Grosser Co. v. Rosen*, 436 Pa. 311, 259 A.2d 679 (1969).

28. There was conflicting evidence as to whether the other two liens were judgment liens or mortgages, *see* Debtor's Exhibits 6 and 7, N.T.

(May 18, 1981, and Aug. 7, 1981), and, thus, whether they are superior to the trustee's or debtor's rights. *See* 11 U.S.C. § 522(f)(1) which allows the debtor to avoid a judgment lien which impairs his exemptions. However, since a decision on that fact is unimportant to our result herein we find it unnecessary to resolve that issue.

29. That was the figure given in the judgment entered by Home Life against the debtor in its complaint in mortgage foreclosure in June, 1979. Although the debtor asserts that only the principal balance ($4,324.72) should be used in calculating the amount of Home Life's lien at the time of the sheriff's sale, the debtor has offered no reason why the other costs included in that judgment amount are not includable as part of the mortgage lien.

less than the increase in value of the property, we conclude that pursuant to § 550(d) Home Life is entitled to a lien on the debtor's property in the amount of $6,388.17.

---

1. This Opinion constitutes the findings of fact and conclusions of law required by Rule 752 of the Rules of Bankruptcy Procedure.

