Robert R. Truitt, Jr., Midland, Tex., for Texas American Bank.

**In re William MARBLE and Sandra Marble, Debtors.**

**Bankruptcy No. 784–00210.**

United States Bankruptcy Court, W.D. Texas, Midland-Odessa Divisions.

June 4, 1984.

## MEMORANDUM AND ORDER

BILL H. BRISTER, Bankruptcy Judge.

The issues before the Court in this case brings into sharp focus a conflict between the equitable principles of the Bankruptcy Code (and the intent of that Code) to enable worthy debtors an opportunity to obtain a fresh start and the strict provision of state law which effectively constitutes a forfeiture in its application.

At all relevant times the debtors, William Marble and Sandra Marble, were indebted to Texas American Bank of Midland, Texas ("Bank") in the approximate sum of $22,-000.00, secured by a second vendor's lien and deed of trust against the debtor's homestead. The debtors were deficient in the payments to the bank on the second lien and the bank, as it was permitted to do under the powers of sale in the deed of trust which had been executed for its benefit, posted the property for trustee's sale on February 7, 1984. Although there was some dispute between the attorneys for the respective parties as to the precise date when the bank was given notice of the debtors' intention to file bankruptcy it is clear that by at least February 6, 1984, the date preceding the scheduled deed of trust foreclosure sale, the attorney for the bank was advised by debtors' attorney that a voluntary Chapter 7 petition would be filed on the following day.

Under Texas law foreclosure sales under a deed of trust, where proper posting and other notice has been made, may occur on the first Tuesday of the month

between the hours of 10:00 A.M. and 4:00 P.M. At 10:00 A.M. on February 7, 1984, the first Tuesday in February, the attorney for the bank checked to determine whether a bankruptcy petition had been filed by the Marbles. He received a negative response from the clerk. He called several more times after 10:00 A.M. to see if the petition had been filed. He caused the trustee's sale of the property to occur "shortly after 10:30 A.M." on February 7, 1984. A representative of the bank bid the amount of the bank's loan of approximately $22,000.00 which, of course, was subject to the first lien in favor of First Federal Savings in the approximate amount of $89,000.00. Thus nothing was paid on the debtors' "equity" in the property.

The voluntary petition under Chapter 7 of Title 11, United States Code, was filed by the debtors at 11:20 A.M. on February 7, 1984, approximately forty-five minutes after the deed of trust foreclosure sale had occurred. The record does not reflect whether the bank made immediate demand upon the debtors to remove themselves and their property from the premises, but it is clear that the debtors remained in undisturbed possession of the property for at least several weeks.

On March 5, 1984, the day preceding the scheduled § 341 meeting of creditors, the debtors entered into a contract with a third party to sell the residence to them for enough money to liquidate the first lien of $89,000.00 to First Federal Savings, to liquidate the second lien to Texas American Bank in the approximate sum of $22,000.00, and to realize an "equity" to the sellers of approximately $8,000.00.

Both the debtors and the bank claimed entitlement to the excess proceeds [1] of sale. They did cooperate to permit the contracted sale to close and the amount in controversy has been held in escrow, awaiting the determination by this Court of the issue of entitlement to those funds.

The bank supports its claim of entitlement to the escrowed monies on both legal and equitable bases. It cites existing Texas law which verifies that there is no equity of redemption available to a Texas debtor after a foreclosure sale. See *Rogers v. Fielder*, 392 S.W.2d 797 (Tex.Civ.App.— Fort Worth 1965, writ ref'd. n.r.e.). Further, it argues that to permit it to recover those excess funds would not amount to a "windfall" to it because the debtor is indebted to it on additional obligations which otherwise would be discharged in bankruptcy and which exceeds the amount of the escrowed monies. As to those additional indebtednesses it recognizes that its claim is unsecured because the Texas Constitution prevents its nonpurchase money, nonimprovement or nontax indebtedness to be secured by lien against the Texas homestead. However, it argues that under equitable principles it should be permitted to receive the escrowed monies and to apply it against the debtors unsecured debt to it.

The debtors do not argue that they have any equity of redemption. However, they do posit that even after the foreclosure sale had been effected they retained an interest in the property ... the right provided by the Bankruptcy Code to avoid any transfer that was made or incurred within one year before the date of the filing of the petition if the debtor received less than a reasonably equivalent value in exchange for the transfer and the debtors were insolvent on the date when the transfer was made. See § 548(a)(2) of the Code. Further, they contend that the trustee's deed was not filed until after the petition in bankruptcy was filed and thus the automatic stay provided by § 362 of the Code prevented the proper recordation of that trustee's deed to create, perfect, or enforce any claim against the property. Debtors cite *In re Jones*, 20 B.R. 988 (Bkrtcy.E.D.Pa.1982) for each of those arguments.

■ In my opinion the fresh start purposes of the Bankruptcy Code is an overriding concept that must be given effect in this case. I am not persuaded by the debt-

---

1. The amount in controversy appears to be $8,182.96, which includes $7,897.59 in principal, $212.00 insurance refund, and two additional escrow refunds of $21.97 and $51.40.

ors' argument that the bank knew that they were going to file the petition and thus should not have proceeded with the foreclosure sale. The bank had made no commitment to the debtors to refrain from proceeding with the foreclosure sale if the petition was not timely filed. At 10:00 o'clock A.M. on February 7, 1984, and for the six hours following that time, the bank was at liberty to proceed with its foreclosure sale, unless restrained by a state court or unless the automatic stay provisions of the Bankruptcy Code were triggered by the filing of a bankruptcy petition. When the trustee's sale was made the petition had not been filed and thus the bank, by causing the sale to be made, acted within its rights.

■ However, the debtors had the right to receive reasonable equivalent value for the property at the sale. *Durrett v. Washington National Insurance Company,* 621 F.2d 201 (5th Cir.1980). At the time of the sale on February 7, 1984, the debtors were insolvent. Although no testimony or other evidence was offered which established the value of the property on February 7, 1984, to be in excess of the indebtedness against it the fact that a meaningful bona fide sale was negotiated less than one month later, and that sale was subsequently closed, creates a very strong presumption that the value of the property on February 7, 1984, approximated the value of March 5, 1984, when the sale was contracted. On February 7, 1984, when the foreclosure sale was made the amount received for debtors' equity in the property was zero. In reality the value of that equity on that date was at least $8,000.00. *See In re Coleman,* 21 B.R. 832 (Bkrtcy.S.D.Tex.1982) (where lienor purchased the debtor's equity in the property at foreclosure sale for 28% of the market value of that equity the amount paid was less than the reasonably equivalent value within the meaning of 11 U.S.C. § 548(a)(2)(A)). Under those limited facts I find that the amount bid at the trustee's sale on February 7, 1984, did not represent the reasonable equivalent value of the real estate on that date, and on that date the debtors were insolvent. I conclude that the deed of trust foreclosure sale on February 7, 1984, should be avoided and set aside.

It is, therefore, ORDERED by the Court that the debtors, William Marble and Sandra Marble, be, and they are hereby, entitled to receive the sum approximating $8,182.96 held by the escrow holder, free and clear of any claim of Texas American Bank of Midland.

All relief not herein granted is denied.