William I. Mirkil Co., Appellant, *v.* Gaylon.

Argued November 10, 1971.   Before JONES, EAGEN, O'BRIEN, ROBERTS and BARBIERI, JJ.

*Edward H. Fackenthal,* with him *Franklin H. Spitzer, Henderson, Wetherill, O'Hey & Horsey,* and *Wolf, Block, Schorr & Solis-Cohen,* for appellant.

*Roger B. Reynolds,* with him *Roger B. Reynolds, Jr.,* for appellees.

OPINION BY MR. JUSTICE O'BRIEN, December 20, 1971:

In October of 1959, appellant, William I. Mirkil Co., a real estate brokerage firm, secured two tenants to occupy adjoining parcels of land in Ardmore, Pennsylvania, owned by Harry and Millie Ettinger. A one-year lease for the larger parcel (Tract A) was with Scott Smith Cadillac Co. for $500 per month, and another one-year lease was with Herbert and Evelyn Albany at $100 per month for Tract B.

Each lease contained provisions obliging the Ettingers to pay appellant leasing commissions for its service and assigned unmatured rents to appellant to the extent of the commissions as they accrued.

In February of 1960, Robert and Ann Gaylon purchased the two parcels from the Ettingers.

From February to April of 1960, appellant continued to collect rentals from the Albanys until the

Gaylons notified appellant that it should terminate the lease and obtain possession of the property for them. From February to August, appellant continued to collect the rentals on the Scott Smith Cadillac lease until it was notified by the Gaylons that it should terminate that lease as well. On or about October 31, 1960, the Gaylons entered into a new month-to-month lease directly with Scott Smith Cadillac at a rental of $500 per month. On April 29, 1961, the Gaylons leased for a one-year term all but a small portion of Tracts A and B to Scott Smith Cadillac for $750 a month. Since that time, Scott Smith Cadillac remains a tenant on the two parcels. At issue in this case is whether appellant is entitled to commissions for rents received on the new lease and renewals of that lease.

On November 15, 1963, appellant filed a complaint for commissions. The Gaylons filed preliminary objections seeking a more specific complaint. On February 2, 1969, appellant filed an amended complaint. On February 13, 1969, the Gaylons filed preliminary objections in the nature of a demurrer. The lower court, sitting en banc, sustained these preliminary objections and dismissed the complaint. The Superior Court affirmed the decision by a per curiam opinion, with Judge HOFFMAN filing a dissenting opinion in which Judge MONTGOMERY and Judge CERCONE joined. We granted allocatur and now we reverse.

The court en banc sustained the appellee's demurrer on the basis of §1 of the Act of June 12, 1878, P. L. 205, 21 P.S. 655, which provides: "A grantee of real estate which is subject to ground rent or bound by mortgage or other *encumbrance* shall not be personally liable for the payment of such . . . encumbrance, unless he shall, by an agreement in writing, have expressly assumed a personal liability therefor, or there shall be express words in the deed of conveyance stating that

the grant is made on condition of the grantee assuming such personal liability: Provided, That the use of the words 'under and subject to the payment of such . . . encumbrance,' shall not alone be so construed as to make such grantee personally liable as aforesaid."

The court held that the leases in question, containing as they do obligations on the part of the lessor to pay real estate commissions, were "other encumbrances" within the language of the statute, and therefore the Gaylons were not responsible for commissions since they had not assumed in writing personal liability therefor.

We agree with the dissenters in the Superior Court. The statute is inapposite. It was designed to prevent an unwitting purchaser of real estate from being held personally liable on obligations he did not intend to assume but which the law imposed on him by reason of ownership or implication from general words in a deed which might amount to less than an explicit assumption. See *Fidelity-Philadelphia T. Co. v. Hale & Kilburn Corp.,* 24 F. Supp. 3 (Pa. E.D. 1937). Brokerage commissions on leases stand on a different footing. There is no problem about the unwitting assumption of obligations without concomitant benefits. Instead, the law has always been, as we said in *Albert J. Grosser Co. v. Rosen,* 436 Pa. 311, 317, 259 A. 2d 679, 681 (1969): "By taking the benefits of the lease and collecting the rents, [the mortgagee in possession] has adopted the lease and must likewise take its burdens."

Appellees deny that they adopted the lease. Instead, they argue that they only took subject to the leases and emphasize that in *Grosser, supra,* we held that the lease and the broker's right to commissions were extinguished when the mortgagee actually purchased the property. Although there is a general rule that sheriff's sales discharge all subsequent junior liens, there

is not such an automatic extinguishment of the leases by an ordinary conveyance. *Landau v. Western Pennsylvania National Bank,* 445 Pa. 217, 282 A. 2d 331 (1971).

Rather, by adopting the benefits of the Scott Smith Cadillac lease, appellees also implicitly assented to the following provisions:

"19. It is understood and agreed that William I. Mirkil Co. is the sole, moving, efficient and procuring cause of this lease, and in consideration of its services Lessor's principal agrees to pay William I. Mirkil Co. at the time of the execution hereof, commissions in accordance with the Recommended Schedule of. Commissions and Charges of the Philadelphia Real Etate [sic] Board now in effect. Lessor's principal acknowledges notice of the provisions of the said Schedule. In the event Lessor's principal fails to make the said payment, William I. Mirkil Co., in addition to any other rights and remedies to enforce payment of said commissions, shall have the right to collect in its name and retain the installments of rental reserved herein until it shall have received, out of the said rentals or otherwise, the said commissions in full, and for that purpose Lessor's principal hereby assigns, transfers and sets over unto William I. Mirkil Co. the rentals reserved herein up to the amount of the said commissions, and Lessee herein is hereby directed and authorized to pay the said rentals as they become due up to the said aggregate amount to William I. Mirkil Co. in its name and upon its demand.

"20. In case this lease is renewed or continued, by expressed or implied agreement, or in any manner whatsoever, for any further period after the expiration of the term hereof, or any renewal or extension thereof, or in case the relationship of landlord and tenant with the same tenant or with any subsidiary, associate

or affiliate of the tenant, or with any person or corporation having any interest by, through or under this lease, or having any interest in the demised premises through or under this lease or the said tenant, continues after the expiration of the term hereof or any renewal or extension thereof, under this or any other lease or agreement, then in any such event, William I. Mirkil Co. shall further receive from Lessor's principal, as additional commission at the times of such renewals or continuances or the entry into any such lease or other arrangement, commissions as prescribed in the present Recommended Schedule of Commissions and Charges of the Philadelphia Real Estate Board on the rentals to accrue under the terms of such renewals or continuances or under the terms of such other lease or arrangement, and so on thereafter, to all intents and purposes as if the terms of such continuances, renewals, leases and arrangements were within the original term of this lease, and to secure the payment of the said additional commissions the rentals are assigned, transferred and set over to William I. Mirkil Co., as herein above elsewhere set forth. . . .

"29. All rights, remedies and liabilities herein given to or imposed upon either of the parties hereto shall extend to their heirs, executors, administrators and successors and, so far as this lease and the term or terms thereby created are assignable, to the assigns of such party."

By assenting to the assignment of the rentals to secure the additional commission, appellees have made this case similar to the case of *Heymann v. 4th Dickerson B. Assn.*, 113 Pa. Superior Ct. 26, 171 A. 482 (1934), where the Superior Court said, quoting from *Landberg v. Equitable Inv. Co.*, 292 Pa. 476, 141 A. 302 (1928), at page 30: "A lessor may assign his lease to a third party, and create in the assignee a vested right

to collect the rent and enforce the covenants or provisions for the purpose for which the assignment was made as effectually as the lessor could have done had he retained the ownership: [citation omitted] . . . . His [assignee's] rights are effectual against the subsequent purchaser of the reversion without notice of the assignment."

The Gaylons also argue that Paragraph 20 does not apply because the relationship referred to in Paragraph 20 must be in reference to the same tract of land. The Gaylons emphasize that the new lease with Scott Smith Cadillac covers not only old Tract A, to which the lease drafted by appellant for the Ettingers and Scott Smith Cadillac applied, but also to practically all of Tract B, which was unaffected by the previous lease with Scott Smith Cadillac. On this argument we believe appellees have a point.

The lease only refers to a particular tract of land. It cannot be construed to include all relationships between the landlord and tenant and/or their assigns regardless of where the land is situate. Moreover, if the lease was drafted by appellant, which seems likely, since appellant's name is on the lease form, the paragraphs quoted above would be strictly construed against the appellant, as the party drafting it. For these reasons, appellant will only be entitled to commissions for that portion of rent received which represents Tract A's portion of the entire leased premises.

However, this proportion must be determined at the trial of this case. Since appellant does have a cause of action for commissions for that proportion of the rent received, it was error to sustain the appellees' preliminary objections.

Order of the Superior Court is reversed and the case is remanded to the Court of Common Pleas of

Montgomery County for further proceedings consistent herewith.

Mr. Chief Justice BELL and Mr. Justice POMEROY took no part in the consideration or decision of this case.