Thomas S. WHITE, Mark G. Trombetta, M.D., Robert E. Faust, Leonard C. Highley, and H. Scott Hawkins, Appellants

v.

TOWNSHIP OF UPPER ST. CLAIR, Robert Crown, t/d/b/a Crown Communications, and Barbara Crown, his wife.

Commonwealth Court of Pennsylvania.

Argued Jan. 27, 2009.

Decided March 3, 2009.

Reargument En Banc Denied April 29, 2009.

David F. Toal, Millvale, for appellants.

Charles P. McCullough, Pittsburgh, for appellee, Township of Upper St. Clair.

Eric G. Soller, Pittsburgh, for appellee, Robert Crown.

BEFORE: McGINLEY, Judge, PELLEGRINI, Judge, and KELLEY, Senior Judge.

OPINION BY Senior Judge KELLEY.

In these consolidated appeals, Leonard C. Highley[1] appeals from: (1) the February 29, 2008 order of the Court of Common Pleas of Allegheny County (trial court) denying Highley's motion for post trial relief from the trial court's December 10, 2007 order; and (2) the trial court's June 23, 2008 order entering judgment for Upper Saint Clair (Township), Robert H. Crown t/d/b/a Crown Communications and Barbara Crown (collectively referred to as "Crown") and against Highley. The trial court's December 10, 2007 order dismissed Highley's complaint against Crown and the Township with prejudice on the basis that Highley's claims were barred by laches because: (1) Highley unreasonably delayed bringing this action; and (2) the Township and Crown had been prejudiced by the delay.

Highley raises the following issues in this appeal:

1. Whether the trial court abused its discretion, ignored the evidence, and committed an error of law when it:

a. determined that a mere delay of 41 days could give rise to the defense of laches;

b. found that Highley did not utilize due diligence in discovering the illegal activities of the Township and Crown;

---

1. The action against the Township of Upper Saint Clair and Crown Communications was originally brought by Thomas S. White, Mark G. Trombetta, M.D., Robert E. Faust, Leonard C. Highley and H. Scott Hawkins. White, Trombetta and Hawkins moved to withdraw from this action on September 9, 2006 and were subsequently dismissed as plaintiffs. Faust was dismissed by the trial court as a plaintiff on the basis that he lacked standing during the trial on the defenses raised by the Township and Crown. Therefore, Highley is the only remaining plaintiff.

c. failed to find that the conduct of Crown and the Township in negotiating a lease, approving a lease, and permitting the 350 foot tower demonstrated unclean hands and that Crown and the Township were barred from asserting laches as a defense; and

d. found that Crown and the Township were prejudiced by Highley's delay of 41 days in filing his lawsuit.

2. Whether this Court should retain jurisdiction over the final disposition of this case.

The facts of this matter are set forth in detail in this Court's opinion in *White, et al. v. Township of Upper St. Clair, Robert Crown, t/d/b/a Crown Communications, and Barbara Crown, his wife*, 799 A.2d 188 (Pa.Cmwlth.2002).[2] The following is a recitation of the pertinent facts from that opinion.

The original plaintiffs in this action are residents of the Township. They brought suit in the trial court to challenge the construction of a 350–foot high communications tower in Boyce Park, a public park located in the Township. Boyce Park was conveyed to the Township by the County of Allegheny under a deed that limited the use of the property to recreation, conservation and historic purposes, and the residents asserted that a communications tower was inconsistent with these deed restrictions.

In 1995, a representative of Crown approached the Township about Crown's interest in constructing a communications tower in the Township. By August of 1995, Crown had fixed upon a location in Boyce Park for the project, which was next to an existing tower of 180 feet built in 1992 that provided the Township with certain emergency communications support. Coincidentally, the Township decided that its existing emergency communications system was inadequate. Crown proposed to replace it in exchange for an easement in Boyce Park.

On April 1, 1996, the Township Commissioners enacted Ordinance 1710 authorizing Township officials to complete negotiations with Crown for the construction of a state-of-the-art communications tower and to enter into a lease of Township realty for that purpose. Ordinance 1710 did not identify the Township realty under consideration for the lease. On May 6, 1996, the Board of Commissioners enacted Ordinance 1712 consisting of numerous amendments to the Zoning Code, one of which exempted the Township and its lessees from all provisions of the Zoning Code.[3]

On June 28, 1996, the Township entered into a lease agreement (Lease) with Crown for an initial term of 25 years with an option to renew for three successive terms. The Lease was for .428 acres of the approximately 200 acres that make up Boyce Park, and it obligated Crown to install, maintain and operate a 350–foot high communications tower and to provide the Township a public communications system for 911, police, fire and emergency medical services. In addition, Crown was required to erect three adjoining buildings for equipment and to encircle the parcel with an eight-foot high cyclone fence topped with barbed wire. Finally, Crown was to pay the Township annual rent of $2500 for its occupancy of the .428 acres of Boyce

**2.** The Township and Crown appealed this Court's decision to the Supreme Court; however, by order of May 11, 2004, the Court denied the petitions for allowance of appeal at docket numbers 410 WAL 2002 and 411 WAL 2002.

**3.** The amendments, save for the last one exempting Crown from the Zoning Code, related to parking and redefining "sexually-oriented business" for purposes of the Zoning Code.

Park with a possibility of a future rent increase if the Lease is extended into additional terms. Crown stipulated that at the time of the execution of the Lease, it was aware of the deed restrictions relating to the uses for Boyce Park.

Excavation and clearing of the property began in July of 1996, and on September 27, 1996, the tower was delivered to the site. By October 7, 1996, the tower reached a height of 200 feet, at which point regulations of the Federal Aviation Administration required that it be lighted. The tower then became noticeable to the residents. By the end of October, the structure was complete.[4]

On November 14, 1996, the residents filed a writ with the trial court. On November 20, 1996, the residents filed a five count complaint seeking declaratory and injunctive relief to have the Lease declared null and void and to have the tower removed. The residents also sought alternative relief in the form of a writ of mandamus. The Township and Crown filed preliminary objections to the complaint, asserting, inter alia, that the residents lacked standing, that the residents failed to state a cause of action (on grounds of laches, estoppel, waiver and inapplicability of a statute) and that the Court lacked subject matter jurisdiction.

On February 7, 1997, the trial court entered an order sustaining in part and overruling in part the preliminary objections. From that point, the procedural history becomes a point-counterpoint series of filings that include: answers with new matter, an amended complaint, new preliminary objections, cross-motions for summary judgments, a motion for leave to amend the complaint and various motions for reconsideration. In the end, after a series of orders sustaining preliminary objections and granting summary judgment, all five counts of the complaint were dismissed.

Four of the trial court's orders were appealed to this Court. On appeal we held that: (1) the residents had standing to pursue all counts of their complaint; (2) the complaint stated a cause of action under the common law relating to lands dedicated to a public purpose; and (3) it stated a cause of action under the following statutes: (a) the Donated or Dedicated Property Act[5] to the extent it sought to enforce the Township's duty set forth in Section 3 of the Act, 53 P.S. § 3383; (b) the Township Subdivision and Land Development Ordinance; and (c) the Township's Home Rule Charter. Accordingly, we remanded this matter to the trial court for consideration of the defenses not yet decided by the trial court and, to the extent necessary

4. On November 8 and 10, 1996, two of the residents, Thomas S. White and Mark G. Trombetta, filed appeals with the Zoning Hearing Board claiming that the tower conflicted with the Township's R–L1 Low Density Zoning District. After a hearing, the Zoning Hearing Board held that the protests were timely filed; that the tower violated the Zoning Code; that Ordinances 1710 and 1712 were improperly enacted; but that Crown had vested rights to continue its use of the property.

On appeal to the trial court, the court determined that the appeals to the Zoning Hearing

Board by White and Trombetta were untimely and vacated the Zoning Hearing Board's findings of fact and conclusions of law. This Court affirmed the trial court and the Pennsylvania Supreme Court dismissed the petitions for allowance of appeal. *See White v. Zoning Hearing Board of the Township of Upper St. Clair; In re Crown Communications, Inc.,* 784 A.2d 286 (Pa.Cmwlth. 2001), *petitions for allowance of appeal denied* 568 Pa. 712, 796 A.2d 989 (2002).

5. Act of December 15, 1959, P.L. 1772, 53 P.S. §§ 3381–3386.

to resolve facts in dispute, a hearing on the merits of each count.

■ On remand, the trial court ordered that the trial proceed by reverse bifurcation on the affirmative defenses of waiver, estoppel and laches raised by Crown and the Township before considering the merits. A three day trial on the defenses commenced on October 17, 2007. By order of December 17, 2007, the trial court determined that Highley unreasonably delayed in bringing this action and that Crown and the Township were prejudiced by the delay. The trial court determined that it was clear from the facts that the planned construction of the tower "might have been known to plaintiff by the use of information within his reach" months before work on the tower began. In addition, the trial court found that:

> [b]y no later than October 5, 1996, plaintiff Highley was actually aware: (a) that Crown Communications was constructing a commercial tower in Boyce Park; (b) that the construction was pursuant to a Ground Lease under which Crown was to pay $2,500 per month to the Township; (c) that the Township authorized construction of the tower pursuant to ordinances passed in April and May of 1996; (d) that the parcel of land on which the Crown tower was to be constructed was subject to a deed restriction limiting use to recreation, conversation and historic purposes; and (e) the reasons provided by the Township for the need for the new communications tower.

Trial Court Opinion at 4. The trial court found further that:

> Despite all of the above, [Highley] neither threatened to bring legal action to prevent the tower's construction or demanded that construction cease. Instead, he waited until a month after the tower was finished before filing suit. Had plaintiff been diligent (and assuming the validity of his arguments regarding the legality of the tower), the project would have been nipped in the bud. Crown would not have spent well over a million dollars to put the tower in Boyce Park and the Township would not have switched its reliance from the old tower to the new tower for its police and emergency communications system. Thus, the record amply demonstrates that plaintiff's lack of due diligence has prejudiced defendants.

*Id.* As a result, the trial court dismissed the complaint with prejudice as all the claims were barred by laches. Post trial motions were denied by the trial court by order of February 29, 2008.[6] The trial court entered judgment for Crown and the Township and against Highley by order of June 23, 2008. These appeals by Highley followed.[7]

■ Laches is an equitable doctrine that bars relief when a complaining party

---

**6.** In an opinion in support of this order, the trial court noted that it agreed with Highley that his failure to object to the construction of the 180 foot high communications tower when it was placed in Boyce Park in 1991 implicates neither the doctrine of equitable estoppel or the doctrine of waiver. Trial Court Opinion at 2, n. 2. The trial court also noted that it further agreed that any waiver by Allegheny County could not defeat Highley's claims. *Id.* Thus, the trial court determined that the affirmative defenses of equitable es-

toppel and waiver were not sustainable by Crown and the Township.

**7.** This Court's scope of review of an order of a trial court denying a motion for post-trial relief is limited to a determination of whether the trial court abused its discretion or committed an error of law. *Pikur Enterprises, Inc.v. Pennsylvania Department of Transportation,* 163 Pa.Cmwlth. 251, 641 A.2d 11, *petition for allowance of appeal denied,* 539 Pa. 657, 651 A.2d 543 (1994).

is guilty of want of due diligence in failing to promptly institute an action to the prejudice of another. *Stilp v. Hafer*, 553 Pa. 128, 718 A.2d 290 (1998). In order to establish laches, a defendant must establish (1) a delay arising from the complaining party's failure to exercise due diligence and (2) prejudice to the defendant resulting from the delay. *Id.* The test for due diligence is not what a party knows, but what he might have known by the use of information within his reach. *Id.* Prejudice may be found where there has been some change in the condition or relations of the parties which occurs during the period the complainant failed to act. *Id.* Whether laches is established requires a factual determination based upon the circumstances of each case. *Id.*

▮ In support of these appeals, Highley argues that the Township and Crown failed to show by clear and convincing evidence that information sufficient to support the commencement of a cause of action was available to Highley or available to the general community.[8] It is not enough to state that certain documents were available to the public; the real question is whether the public documents provided full and accurate information. Specifically, the ordinances were advertised by title only and the titles were innocuous and appeasing; the ordinances were never discussed by the Commissioners in the context of the deed restrictions or the Home Rule Charter; the title of Ordinance No. 1712 is to "clarify zoning requirements for the Township" when in fact the ordinance exempts the Township and its lessees from all zoning regulations; the minutes of the public hearings do not disclose the tower and all its particulars; and any resident who would have inspected the Ordinances and the hearing minutes would not have know that a 350 foot tall commercial tower was to be erected in Boyce Park.

Highley argues further that he did not become aware of the tower until two days before his October 5, 1996 letter to the Township objecting to the construction of the tower. Highley contends that the Township in this action freely admitted that the available documents do not fully disclose the existence of the tower and all its particulars. The only proof offered by the Township and Crown on the question of implied or constructive knowledge was by inference alone through the advertisement and adoption of the Ordinances and the availability of the Ordinances and the attendant hearing minutes at the Township offices. Highley contends that the information was simply concealed or unavailable to Highley prior to October 5, 1996. Highley points out that even the August 28, 1996 newspaper article incorrectly stated that the tower was approved by Allegheny County when in fact it had not been approved.

8. Highley also argues that Crown and the Township cannot base their claim that this action is barred by the doctrine of laches on the 30 day statutory appeal period found in Section 1002–A of the Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. § 11002–A, because this case is not a genuine land use case under the MPC, and Section 5571 of the Judicial Code, 42 Pa.C.S. § 5571, because this action does not challenge or attack the validity of any ordinances specifically numbers 1710 and 1712. Highley points out that this is an action seeking a declaration that the agreement violates the deed restrictions and the Home Rule Charter. Highley contends that the only time limitation applicable to this action is the 5 year limit to enforce a violation of a trust found at Section 5526(3) of the Judicial Code, 42 Pa.C.S. § 5526(3) and this action falls within that time limitation. We note that the trial court did not rely upon the above argument in rendering its decision and Crown and the Township do not address this argument in their brief to this Court.

With respect to Highley's actual knowledge, he argues that he testified that he first learned of the tower on October 2, 1996 when he observed the tower over the Boyce Road tree line. After that, Highley wrote a letter to the Commissioners' Chairman, attended the October 7, 1996 and October 14, 1996 Commissioners' meetings to petition government and to oppose the tower; attended a November 2, 1996 residents' meeting to discuss the possibility of legal action; and commenced legal action on November 14, 1996. Highley argues that this was less than 60 days after Highley had actual knowledge of the tower that he petitioned the Township for action and when that course of conduct failed, he joined a legal challenge to the tower.

Upon review, we conclude that the trial court abused its discretion by denying Highley's motion for post trial relief. A review of the record in this matter reveals that Crown and the Township failed to prove a delay arising from Highley's failure to exercise due diligence. We begin with the Township's advertisement and enactment of Ordinances 1710 and 1712.

Ordinance 1710 is titled "Authorizing the Execution of a Lease Agreement for the Purpose of Enhancing the Township's Safety, Recreation and Conservation Services, Communication Capabilities." Reproduced Record (R.R.) at 151A. Ordinance 1710 was adopted by the Township on April 1, 1996. *Id.* However, the Township did not provide prior public notice or advertisement of Ordinance 1710. When the Township did advertise the Ordinance, it did so post-enactment on April 10, 1996, without describing the nature of the lease arrangement proposed by the Ordinance nor did it reveal the party involved in the lease arrangement. R.R. at 294A. The advertisement merely listed the title of Ordinance 1710. *Id.*

With regard to Ordinance 1712, the Township did provide prior notice that it intended to adopt the ordinance on May 6, 1996. R.R. at 295A–97A. However, the legal notice provided by the Township and the advertisements in the local newspaper stated only that the proposed ordinance would clarify application of zoning requirements for the Township. *Id.* The notice and advertisements did not explain that the Township intended to adopt Ordinance 1712 in order to exempt the Township and its lessees from the zoning requirements. *Id.*

Thus, we conclude that Highley could not have ascertained from the foregoing public notice and advertisements of Ordinances 1710 and 1712 that the Township intended to enter into a lease agreement with Crown to erect a 350 communications tower in Boyce Park that would be exempt from the zoning requirements. We now turn to the minutes of the meetings held by the Commissioners wherein the Commissioners adopted Ordinances 1710 and 1712.

The minutes of the Commissioners' meeting held on April 1, 1996 reveal that the Commissioners first established May 6, 1996 as the date for the public hearing on Ordinance 1712. R.R. at 197A. With respect to Ordinance 1710, the minutes of the Commissioners' meeting provides, in entirety, as follows:

RECOMMENDATION RE. AUTHORIZATION FOR TOWNSHIP COMMUNICATION SYSTEM PROJECT

Mr. Watkins, [Township Manager,] stated that Bill No. 15–96 would authorize the appropriate Township officials to negotiate and enter into a lease agreement with Crown Communications for the replacement of the Township communication tower. This will allow the Township to improve the coverage area.

Commissioner DeLeo moved that the Board adopt Bill No. 15–96, which would authorize the Township to enter a lease agreement for the communication tower. This was seconded by Commissioner Yard and carried with a 6–0 roll call vote.

*Id.* The foregoing recitation of what transpired with regard to the lease agreement with Crown for the replacement of the Township's communication tower clearly does not provide notice that the proposed replacement tower would be located in Boyce Park and that the tower would be 350 feet tall.

The minutes of the Commissioners' May 6, 1996 meeting provide that the proposed text of the amendment known as Ordinance 1712, which amended Chapter 130 of the Township's Zoning Code, was reviewed. R.R. at 205A. The text included the statement "to clarify application of zoning requirements for the Township." *Id.* The minutes provide further that three individuals were sworn in to give testimony and that several new exhibits were entered into the record. *Id.* The minutes do not provide a recitation of the testimony that was given by the three individuals nor do the minutes explain or list what exhibits were entered into the record. *Id.*

Finally, the minutes state that "Commissioner Bates then moved to adopt Bill No. 17–96, amending Chapter 130 of the Code of the Township. This was seconded by Commissioner Yard and carried with a 7–0 roll call vote." *Id.* Again, the following recitation of the May 6, 1996 minutes clearly does not provide notice that the Township was purporting to enter into the Lease with Crown for a 350 foot communication tower in Boyce Park that would be exempt from the zoning requirements.

Accordingly, we conclude that Highley could not have ascertained from the min-utes of the Commissioners' meetings held on April 1, 1996 and May 6, 1996 respectfully, that the Township planned to enter into a lease agreement with Crown to construct a 350 foot communications tower in Boyce Park. The record further shows that Highley could not have known of the details of the negotiations between the Township and Crown prior to entering into the Lease as the discussion of the negotiations by the Commissioners was done in closed executive sessions. R.R. at 836A–41A; 862A.

In determining that Highly might have known of the planned construction of the tower by the use of information within his reach months before work began on the tower, the trial court also relied upon the fact that (1) the Township and Crown entered into the Lease on June 28, 1996; (2) extensive preparation work for the tower was time consuming and noisy and attracted onlookers; (3) an article on the tower appeared in the local newspaper, *The Advertiser,* which referred to the commercial lease and planned size of the tower and mentioned that Allegheny County had deeded the park to the Township strictly for public and recreational use; and (4) a Township resident had circulated an eight page newsletter on or about September 20, 1996 that was devoted entirely to the planned construction of the tower. However, due to the fact that Highley was unaware, and could not have known based on the information available prior to the signing of the Lease, that a 350 foot tall commercial communications tower was scheduled to be constructed in Boyce Park, he would have no reason to request a copy of the Lease or inquire as to the issuance of building permits.

In addition, Highley testified that he did not routinely pass the area in the park where the tower was to be constructed and where the preparatory work was being

performed. R.R. at 551A. Highley testified further that when he did visit the site of the tower on October 2, 1996, he did not see any visible postings of building permits or occupancy permits on Boyce Road but that he did see the permits posted inside the park near the tower site. *Id.* at 552A.

With regard to the August 28, 1996 article in the local newspaper, *The Advertiser,* Highley testified that he did not recall seeing the article nor can he be charged with having knowledge of the planned construction of the tower through an article as opposed to a legal notice contained in the local newspaper. R.R. at 571A. Finally, the record is not clear as to when the eight page newsletter was circulated or received by other residents of the Township. The letter's author, Matthew McLaughlin, testified that he did not recall about the time of distribution, the manner of distribution, or the extent of distribution of the September 20, 1996 letter but he was sure that it was not circulated on September 20, 1996. *Id.* at 787A. Highley testified that he did not recall receiving the September 20, 1996 letter but he was sure he received it at some point. *Id.* at 474A. Moreover, the clip and mail forms attached to the letter, which some residents sent to the Commissioners, are not dated. *See* Original Record, Crown Exhibit 221.

Accordingly, we disagree with the trial court's conclusion that it is clear from the record in this matter that Highley might have known of the planned construction of the tower by the use of information within his reach months before work on the tower began. At most, the record supports the conclusion that Highley might have known of the construction of the tower in late September 1996 after construction had begun on the tower. We now turn to the trial court's conclusion that Highley failed to exercise due diligence from the time he

actually learned of the construction of the tower until he filed suit in the trial court.

■ As found by the trial court, by no later than October 5, 1996, Highley was actually aware: (a) that Crown Communications was constructing a commercial tower in Boyce Park; (b) that the construction was pursuant to a Ground Lease under which Crown was to pay $2,500 per month to the Township; (c) that the Township authorized construction of the tower pursuant to ordinances passed in April and May of 1996; (d) that the parcel of land on which the Crown tower was to be constructed was subject to a deed restriction limiting use to recreation, conversation and historic purposes; and (e) the reasons provided by the Township for the need for the new communications tower. The trial court found further that instead of immediately bringing legal action to prevent the tower's construction or to demand that construction cease, Highley waited until a month after the tower was finished before filing suit. The trial court stated that had Highley been diligent, "the project would have been nipped in the bud." We disagree that the foregoing results in the conclusion that Highley did not exercise due diligence.

The record shows that once Highley actually discovered the tower's construction, he immediately sent a letter to one of the Township's Commissioners. Highley then attended the regularly scheduled Commissioners' meeting on October 7, 1996. Due to the number of residents who expressed concerns about the communications tower at the October 7th meeting, the Commissioners held a special meeting on October 14, 1996. The record shows that Highley then attended a residents' meeting on November 2, 1996, at which counsel was present to advise the residents on what legal course was available to them to protest the construction of the tower. Thereafter,

Highley and the other original plaintiffs filed a writ with the trial court on November 14, 1996 thereby putting the Township and Crown on notice that legal action was pending against them with regard to the tower's construction.

The time frame from when Highley was actually aware of the tower's construction and the filing of suit was approximately forty days. While this Court understands that this is an equity action, the Court also understands that these types of communication towers require a relatively short time to construct. During the time period between October 5, 1996 and November 14, 1996, Highley did not sit on his hands and simply watch the tower's completion. He not only wrote a letter to the Commissioner representing his ward, he also attended the regularly scheduled Commissioners' meeting and a special meeting scheduled by the Commissioners as a result of the number of residents who appeared at the first meeting to voice opposition to the tower's construction. Thereafter, he and other residents arranged to meet with legal counsel to weigh their options which ultimately resulted in the filing of this action.

As stated previously herein, this whole process took about forty days, which this Court believes is a reasonable amount of time, given the circumstances of this case, for Highley to first try and get the Township to change its mind regarding the tower and then to seek legal counsel to remedy what Highley believes is a wrong committed by the construction of the tower. The fact that it is now over twelve years since the tower was completed and that the Township has benefited from the tower is of no moment when determining whether Highley lacked due diligence in bringing this action in the first instance. As Crown and the Township have failed to show that Highley did not exercise due diligence in filing suit, we need not address whether Crown and the Township were prejudiced.

Accordingly, we vacate the trial court's orders and remand this matter for a hearing on the merits.[9]

### ORDER

AND NOW, this 3rd day of March, 2009, the February 29, 2008 order and June 23, 2008 order of the Court of Common Pleas of Allegheny County entered in the above-captioned matters are vacated and this matter is remanded for proceedings on the merits.

Jurisdiction relinquished.

---

9. Based on our disposition of the matter, we decline to address the remaining issues raised by Highley in these appeals and we also decline to grant Highley's request that this Court retain jurisdiction of this matter in order to address and decide the merits of the complaint. In reviewing this matter, we are acting in our appellate capacity. It is within the province of the trial court to weigh the evidence and make the factual determinations necessary to dispose of this action.