# Cullison v. Gettysburg Economic
# Development Corporation

*Christopher S. Lucas,* for plaintiffs.
*Rees Griffiths,* for defendants.
*Edward G. Puhl,* for defendants.

CAMPBELL, *J.,* June 3, 2010—Presently before the court is defendant Adams County National Bank's petition to strike lis pendens. For the reasons set forth herein, said petition is granted.

## PARTIES

(1) Plaintiff Parksville Properties is/was a partnership with a place of business at 5 Tiffany Lane, Gettysburg, Pennsylvania.

(2) Plaintiffs Marina Cullison and Shelly Verber are natural persons and partners in Parksville Properties.

(3) Defendant Gettysburg Economic Development Corporation (GEDC) is a corporation formed by the Borough of Gettysburg with a place of business at 59 High Street, Gettysburg, Pennsylvania

(4) Defendant Adams County National Bank (ACNB) is a corporation with a business address of P.O. Box 3129, Gettysburg, Pennsylvania

## BACKGROUND

On January 25, 1989, plaintiffs purchased the property at issue in this matter for $775,000. (Defendant's exhibit B.) Plaintiffs conveyed the property to GEDC under a special warranty deed for a price of $1,800,000 dated September 21, 2007. (Plaintiffs' exhibit 2.) The deed was recorded on September 27, 2007, at 2:36 p.m. All the parties involved expected the property to be redeveloped with funding from a Regional Economic Development District Initiative of South Central Pennsylvania (REDDI) grant through the Pennsylvania Redevelopment Assistance Capital Project (RACP).[1] To finance part of the purchase price, and other expenses,

---

1. A grant program for economic development.

GEDC sought a $2,100,000 loan from ACNB. As a condition of the loan, ACNB required that GEDC have good and marketable title, free of liens and encumbrances, and provide a first priority purchase money mortgage. (Defendant's exhibit D.) GEDC agreed, and ACNB recorded its mortgage on September 27, 2007, at 2:39 p.m. (Defendant's exhibit E.) GEDC then paid plaintiffs $1,300,000 up front and granted a mortgage for the remaining $500,000 of the purchase price. Paragraph 8 of the agreement stated, "[i]t is the intention of the mortgagor and mortgagee that this mortgage shall be second in lien priority and subordinate to the first mortgage lien of Adams County National Bank of even date herewith." (Defendant's exhibit E.) Plaintiffs recorded their mortgage on September 27, 2007, at 2:40 p.m. (Plaintiffs' exhibit 1.)

To further secure plaintiffs' interest, their second mortgage contained a demolition restriction, providing that "mortgagor will not permit the demolition of any improvements on the property during the term of this mortgage." (Plaintiffs' exhibit 1.) This language did not appear in the September 21 deed conveying the property to GEDC. (Plaintiffs' exhibit 2.) The only restriction in the deed provided that it was subject to all easements of record. *Id.*

The expected grant from RACP was never forthcoming, and GEDC has defaulted on both mortgages. On November 18, 2009, ACNB initiated an action in mortgage foreclosure against GEDC. On January 8, 2010, ACNB was awarded a judgment by default. On January

20, 2010, ACNB entered judgment against GEDC. The property was set for sheriff's sale on May 21, 2010.

On April 28, 2010, plaintiffs filed a complaint seeking a declaratory judgment that title to the subject property is burdened with the demolition restriction until the second mortgage is paid in full, and that GEDC should be ejected on grounds that it obtained title through false pretenses. The complaint contains six counts. Counts 1-3 allege that the deed between plaintiffs and GEDC contained a covenant that attached and ran with the land, namely that GEDC and its successors were bound by the demolition restriction contained in the second mortgage. The first count alleges the mortgage restriction created a fee simple subject to a condition subsequent. Counts 2 and 3 allege a negative easement in gross and an equitable servitude, respectively. Count 4 alleges the demolition restriction cannot be discharged via the sheriff's sale and any purchaser is bound by it. Count 5 seeks reformation of the deed to add the demolition restriction, and Count 6 seeks ejectment, alleging fraud.

On May 11, 2010 plaintiffs filed a lis pendens. On May 19, 2010, at the plaintiffs' request in the foreclosure action, the court entered an order postponing the sale until June 4, 2010, in order to ensure plaintiff Verber had sufficient notice of the sale as required by applicable rules of court. ACNB filed a motion to strike lis pendens on May 25, 2010. The complaint in this case was also served on defendants on May 25, 2010. No other pleadings have been filed in this case. Hearing was held on the motion to strike lis pendens on June 1, 2010.

## DISCUSSION

A lis pendens may only be indexed when title to real estate itself is involved in a suit. *Century 21 Daystar Inc. v. Philips,* 5 D.&C.4th 543, 544 (Lehigh Cty. 1990).

"Its purpose is merely to give notice to third persons that the real estate is subject to litigation and that any interest which they may acquire in the real estate will be subject to the results of the action. (citations omitted) Lis pendens has no application except in cases involving the adjudication of rights in specific property. (citations omitted) Thus, a party is not entitled to have his case indexed as lis pendens unless title to real estate is involved in litigation. Lis pendens may not be predicated upon an action seeking to recover a personal demand. (citations omitted)" *Id.*

The Supreme Court has held that

"being a creature not of statute but of common law and equity jurisprudence, the doctrine of lis pendens is wholly subject to equitable principles. Thus, if a plaintiff were to delay unreasonably in the prosecution of his claim, or if the operation of the doctrine should prove to be harsh or arbitrary in particular instances, equity can and should refuse to give it effect, and, under its power to remove a cloud on title, can and should cancel a notice of lis pendens which might otherwise exist." *Dice v. Bender,* 383 Pa. 94, 97-98, 117 A.2d 725, 727 (1955).

Plaintiffs have argued that section 4302 of the Judicial Code allows a lis pendens to be indexed so long as any interest in real property is claimed during litigation. Sec-

tion 4302 provides, "every document effecting title to or any other interest in real property which is filed and indexed in the office of the clerk of the court of common pleas of the county where the real property is situated . . . shall be constructive notice to all persons of the filing and full contents of such document." 42 Pa.C.S. §4302(a). Contrary to plaintiffs' assertion, section 4302 merely states that documents properly filed with the relevant filing office serve as notice to all others. It does not change the fundamental notion that title to property must be involved for a lis pendens to be properly indexed.

As an initial matter, plaintiffs do not dispute that ACNB's mortgage was first in priority. ACNB's mortgage is a purchase money mortgage and was recorded prior to the mortgage held by plaintiffs. Purchase money mortgages have priority over all others. 42 Pa.C.S. §8141. Furthermore, the mortgage in favor of plaintiffs states in pertinent part, "it is the intention of the mortgagor and mortgagee that this mortgage shall be second in lien priority and subordinate to a first mortgage lien of Adams County National Bank of even date herewith." (Defendant's exhibit F.) The property is scheduled for a sheriff's sale on June 4, 2010, on the foreclosure action of the ACNB mortgage which will divest all junior liens on the property. 42 Pa.C.S. §8152(c); *William I. Mirkil Co. v. Gaylon,* 446 Pa. 111, 115, 285 A.2d 181, 183 (1971). Once a sheriff's sale related to the first mortgage is completed, the buyer acquires a vested interest and the second mortgagee is divested of all interest in the property. *The Reliance Corporation v. Rapp's Dam Bridge Inc.,* 43 D.&C.3d 425, 428 (Chester Cty. 1987). Therefore, in

order for the demolition restriction contained in the second mortgage to bind subsequent purchasers, the restriction must run with the land. Plaintiffs argue that it does.

Two types of covenants may be used in a real estate transaction to restrict the owner's use and enjoyment of his property: a personal covenant and a real covenant. *Mock v. Hoffman,* 27 D.&C.3d 169, 170 (Somerset Cty. 1980). A personal covenant is enforceable only between the parties involved; a real covenant runs with the land. *Id.* Because a lis pendens cannot be entered based upon an action to recover on a personal demand, a personal covenant will not support it. "The test in determining whether a particular covenant runs with the land is the intention of the parties; and to ascertain the intent, resort may be had to the words of the covenant in light of the surrounding circumstances and the subject of the grant." *Id.* at 171. Restrictive covenants, although not favored, are legally enforceable. *Logston v. Penndale Inc.,* 394 Pa. Super. 393, 400, 576 A.2d 59, 62 (1990.) They are to be strictly construed against persons seeking to enforce them and in favor of free, unrestricted use of property. *Id.*

Covenants in *deeds* "so closely connected with the realty that their benefits or burdens pass with it to subsequent purchasers are real covenants." But covenants in a mortgage are intended to bind the covenantor only and terminate on satisfaction *or discharge* of the mortgage. Such covenants cannot become a charge on the realty in perpetuity. *DeSanno v. Earle,* 273 Pa. 265, 270, 117 A. 200, 202 (1922).

In this instance, the presence of the restrictive covenant in the second mortgage, but not in the deed, is significant. The covenant clearly states that it exists during "the term of this mortgage." A mortgage is merely collateral for the payment of some primary obligation. *Raneri v. Inn America of Pennsylvania Inc.,* 29 D.&C.3d 239, 240 (Westmoreland Cty. 1984). An express covenant in a mortgage is merely ancillary to and in support of that primary obligation and its function is to furnish collateral security for the performance of the terms of that obligation. *Id.* Plaintiffs' own complaint states that the purpose of the covenant was to provide additional security to plaintiffs. (Complaint, ¶¶14 & 15.) Therefore, unless this covenant can be interpreted as also being a part of the deed, it cannot run with the land. To the contrary, the restriction in a mortgage is divested and extinguished upon foreclosure sale on the first, more senior mortgage. Plaintiffs are then left with a personal demand for payment of the balances due on the note. Accordingly, because the mortgage restriction gives plaintiffs no claim to title in the real estate, a lis pendens is not appropriate.

Plaintiffs first argue that the demolition restriction created a fee simple subject to a condition subsequent. This property interest is created when a *deed* provides that upon the happening of some specified event, the grantor has the power to terminate the estate. *Emrick v. Bethlehem Township,* 506 Pa. 372, 379, 485 A.2d 736, 739 (1984). In interpreting a deed, the following guidelines apply:

"(1) [T]he nature and quantity of the interest conveyed must be ascertained from the instrument itself and cannot be orally shown in the absence of fraud, accident or mistake and we seek to ascertain not what the parties may have intended by the language but what is the meaning of the words . . . ; (2) effect must be given to all the language of the instrument and no part shall be rejected if it can be given a meaning . . . ; (3) if a doubt arises concerning the interpretation of the instrument it will be resolved against the party who prepared it . . . ; (4) unless contrary to the plain meaning of the instrument, an interpretation given it by the parties themselves will be favored . . . ; (5) to ascertain the intention of the parties, the language of a deed should be interpreted in the light of the subject matter, the apparent object or purpose of the parties and the conditions existing when it was executed." *Higbee Corporation v. Kennedy,* 286 Pa. Super. 101, 109, 428 A.2d 592, 595 (1981).

It is quite clear that there is absolutely no restriction contained in the deed and neither the second mortgage nor the deed has language suggesting that title would revert to plaintiffs upon default in payment of the second mortgage. The only restriction contained in the deed is standard language providing that title was subject to easements of record. However, the second mortgage was not of record at the time the deed was executed.

Likewise, plaintiffs' arguments that the demolition restriction created a negative easement in gross and/or an equitable servitude also fail. First, an easement cannot be an estate or interest in land, or a right to any part of it. *Assalita v. Chestnut Ridge Homeowners Association,*

866 A.2d 1214, 1218 n.13 (Pa. Commw. 2005). An easement in gross is entirely personal and is not attached to the property. *Hassler v. Mummert,* 242 Pa. Super. 536, 542, 364 A.2d 402, 405 (1976). An easement in gross does not create a right to vesting of title to the real estate. Therefore, a lis pendens is not appropriate on this ground and the demolition restriction would not bind a subsequent owner purchasing at a sheriff's sale in a foreclosure action.

An equitable servitude, *i.e.* easement by implication, is acquired "where the intent of the parties is clearly demonstrated 'by the terms of the grant, the surroundings of the property and other res gestae of the transaction.'" *Purdy v. Zaver,* 398 Pa. Super. 190, 199, 580 A.2d 1127, 1132 (1990). (citations omitted) On the face of the documents presented to the court it is clear that the demolition restriction itself indicated it was to continue only during the term of the second mortgage (which term ends when it is divested), that plaintiffs stated in their own complaint that its purpose was to secure the second mortgage, that ACNB would only grant a mortgage if GEDC owned the property free of any encumbrances, and there is no language in any document presented to the court granting plaintiffs a reversionary interest. Plaintiffs have no claim to the title in the land. Therefore, an equitable servitude is not a proper ground supporting entry of lis pendens.

In addition, the plaintiffs' claims to a reversionary interest or the right to an ownership interest or title to the property runs afoul of the statute of frauds. 33 P.S. §1. The statute of frauds provides that no agreement for

the sale of real estate will be enforceable unless it is in writing and signed by the party to be charged. *Fannin v. Cratty*, 331 Pa. Super. 326, 331, 480 A.2d 1056, 1058 (1984). The purpose of the statute is to prevent assertions of verbal understandings to obviate the opportunity for fraud and perjury. *Id.* The statute of frauds is applicable to alleged building and use restrictions. Plaintiffs have failed to produce any writings suggesting they have some interest involving title. The plain language of the documents presently before the court simply does not warrant such an interpretation. Accordingly, their lis pendens is inappropriate.

Importantly, in seeking to assert an ownership interest in this property, plaintiffs are ignoring their own assurances made in the deed. The deed stated that "[g]rantors hereby covenant and agree that they will warrant specially the property hereby conveyed."

"A covenant or agreement by the grantor or grantors in any deed or instrument in writing for conveying or releasing land that, he, they, or it 'will warrant specially the property hereby conveyed,' shall have the same effect as if the grantor or grantors had covenanted that he or they, his or their heirs and personal representatives or successors, will forever warrant and defend the said property, and every part thereof, unto the said grantee, his heirs, personal representatives and assigns, against the lawful claims and demands of the grantor or grantors, and all persons claiming or to claim by, through, or under him or them." 21 Pa.C.S. §6.

This warranty provides that the grantor will defend the grantee from all lawful claims against the property,

*including those held by the grantor.* Under a special warranty deed, the grantor agrees to defend the title to the property against an adverse claimant with a superior interest in the land claiming through the grantor. *Leh v. Burke,* 231 Pa. Super. 98, 110, 331 A.2d 755, 762 (1974). By bringing this action claiming an interest in title to the conveyed real estate, whether it is a legitimate action or not, plaintiffs are violating the very terms of their own warranty. By agreeing to defend the grantees against any claim made against the property, plaintiffs cannot turn around and assert an ownership interest in the property.

The lis pendens is also blocked by the doctrine of laches. A lis pendens may not be entered merely as a tool to leverage a party's position. *Dice,* 383 Pa. at 98, 117 A.2d at 727; *Century 21 Daystar,* 5 D.&C.4th at 544. "Laches is an equitable doctrine that bars relief when a complaining party is guilty of want of due diligence in failing to promptly institute an action to the prejudice of another." *White v. Township of Upper St. Clair,* 968 A.2d 806, 810-11 (Pa. Commw. 2009). To establish laches, a defendant must show a delay arising from the complaining party's failure to exercise due diligence, and prejudice to the defendant resulting from delay. *Id.* The test for due diligence is not what a party knows, but what he might have known by the use of available information. *Id.* In this matter, ACNB initiated the foreclosure action on November 18, 2009. Judgment by default was granted on January 8, 2010. The property was set for a sheriff's sale on May 21, 2010. It was not until April 28, 2010, that plaintiffs filed their complaint, more than five months

after the bank instituted foreclosure proceedings and less than one month before the scheduled sheriff's sale. Plaintiffs' actions have already resulted in pushing the sheriff's sale back to June 4, 2010. The basis of essentially all claims in plaintiffs' complaint occurred in the months leading up to the September 2007, conveyance of the property. Plaintiffs' attempts to further hinder ACNB's efforts to enforce its rights in execution upon its first mortgage is prejudicial to ACNB and unreasonable especially considering the lack of any meritorious claims by plaintiff against ACNB. This is unreasonable delay in light of the information that plaintiffs knew or could have discovered. ACNB has been prejudiced by the delay due to the postponed sheriff's sale.

Therefore, the doctrine of laches (an equitable doctrine) precludes the lis pendens filed at a last minute in an effort to leverage plaintiffs' position and delay further ACNB's pursuit of its lawful rights.

The complaint also seeks reformation of the deed to include the demolition restriction and ejectment of GEDC from the property. To reform the deed to include the demolition restriction, plaintiffs would have to show that the terms of the deed do not reflect the intent of the parties, as the result of fraud, accident, or mistake. *McNaughton Properties LP v. Barr*, 981 A.2d 222, 229 (Pa. Super. 2009). As discussed above, to do this the plaintiffs would need the court to look beyond the plain terms of the writings available. Once again, this would raise a statute of frauds issue that plaintiffs cannot overcome. The plain language of the documents shows the restric-

tion was placed in plaintiffs' junior mortgage only. Plaintiffs were paid fair consideration (in the form of $1,300,000 cash and a $500,000 note) for the conveyance of all title they had in the property. Plaintiffs have the ability to pursue personal demands for payment of the balance due on the note. If plaintiffs have valid claims for fraud they can pursue these claims via an action for damages. Equity interests preclude the filing of a lis pendens to further delay proceedings.

Finally, plaintiffs' ejectment action also does not support their claim that title is at issue. In support of their ejectment action, plaintiffs have pled numerous allegations of fraud against GEDC and the Borough of Gettysburg.[2] Other than a blanket claim that ACNB was a part of this alleged fraud, a claim not supported in the pleadings, this allegation relates solely to GEDC. Plaintiffs counsel conceded that they do have an action for damages against GEDC and the borough, but it is not an attractive alternative.[3] Ejectment is an action filed by a plaintiff who does not have possession of land, but has the right to posses it. *Siskos v. Britz,* 567 Pa. 689, 698, 790 A.2d 1000, 1006 (2002). The action can only proceed if the plaintiff is presently out of possession and has a present right to immediate possession. *Id.* at 701, 790 A.2d at 1008. The plaintiff vendor cannot dispossess the de-

---

2. Plaintiffs have not made the Borough of Gettysburg a party in this case.

3. The court need not address herein the merit, or lack thereof, of any action for fraud. While GEDC may or may not be insolvent, it is noted that many of the averments of fraud in the complaint involve the Borough of Gettysburg, which is not a party to this action.

fendant vendee until the vendor has refunded the purchase money that he has received or compensated the vendor for any improvements made to the property. *Walker v. France,* 112 Pa. 203, 213, 5 A. 208, 210 (1886). Plaintiffs sold the land to GEDC, do not have a present right to immediate possession, have not refunded the $1,300,000 paid to them by ACNB at the time of the sale, and indicated an unwillingness to do so. Therefore, ejectment would not be possible at this time. In any event, an ejectment action seeks possession, not title, to the real estate. Therefore, a lis pendens is not supported by plaintiffs' fraud-based ejectment action.

Finally, plaintiffs' reliance on *Powell v. Emigrant Mortgage Company Inc.,* 988 A.2d 1288 (Pa. 2010) is misplaced. *Powell* is a case on allocator to the Supreme Court. The court was unable to locate a copy of the decision being addressed by the Supreme Court. However, this court will not make a decision based on what the Supreme Court may or may not do. This court is bound by the decisions presently in existence. Furthermore, based on the briefs of the parties, it is apparent that *Powell* involves a lis pendens filed *before* the mortgage was recorded, and therefore, not on point with this case.

## CONCLUSION

The plain language of the second mortgage and deed plainly show that the demolition restriction was not intended to run with the land and bind subsequent purchasers or grant plaintiffs a reversionary interest. The second

mortgage is junior to ACNB's purchase money mortgage; it will be divested at sheriff's sale. Plaintiffs are unable to show any modification to those agreements by any valid writings which would satisfy the statute of frauds. Additionally, operation of the doctrine of lis pendens is arbitrary in this instance based on the documents of record, the nature of the averments in plaintiffs' complaint, and plaintiffs' acknowledgment that it has an appropriate action for damages, whether or not it is an attractive one. Because none of plaintiffs' claims would entitle them to title, a lis pendens is inappropriate. Accordingly, ACNB's petition to strike lis pendens is granted and the attached order is entered.

## ORDER

And now, June 3, 2010, the petition to strike lis pendens filed by defendant Adams County National Bank on May 18, 2010, is granted. The Adams County prothonotary is directed to strike the lis pendens.